**Allen C. GATTIS, Plaintiff,**

v.

**Marcelino CHAVEZ, M. D., Defendant.**

Civ. A. No. 74–425.

United States District Court,
D. South Carolina,
Spartanburg Division.

Jan. 5, 1976.

**34**

Ellis I. Kahn of Solomon, Solomon, Kahn & Roberts, Charleston, S. C., Robert E. Corry, Jr., of Dennis & Fain, Atlanta, Ga., for plaintiff.

G. Dewey Oxner, Jr., of Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

Defendant in this medical malpractice action has moved for summary judgment on the ground that the South Carolina statute of limitations [1] bars recovery. The plaintiff, who admittedly failed to file his complaint within six years of either the alleged misdiagnosis or the date of his last treatment by the defendant, contends that the statute is not a bar because suit was instituted within six years of the date upon which the alleged malpractice was *discovered*.

The relevant facts, about which there is no substantial dispute, reveal that the plaintiff, who is a resident and citizen of Georgia, commenced this action on April 4, 1974, by filing his complaint in this court.

---

1. S.C.Code Ann. § 10–102 (1962) provides:

*General rule as to time for commencement.* —Civil actions can only be commenced within the periods prescribed in this Title after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute.
S.C.Code § 10–141 (1962) provides:

*General rule.*—The periods for the commencement of actions other than for the recovery of real property shall be as prescribed in the following sections.

S.C.Code Ann. § 10–143(5) (1962) provides:
Within six years:
(5) An action for criminal conversation or for any other injury to the person or rights of another, not arising on contract and not hereinafter enumerated.
Defendant also contends that the Georgia statute of limitations bars this action, but, for the reasons stated below, only the South Carolina statute is relevant.

The complaint alleges acts of negligence on the part of the defendant physician, who, at the time of the alleged negligent acts, was practicing neurosurgery at the Medical College of Georgia in Augusta. All of the acts of negligence in alleged diagnosis and treatment occurred in Georgia. In the fall of 1967 the defendant resigned his post at the Medical College of Georgia and moved to Spartanburg, South Carolina, where he opened up a practice in neurosurgery which continues to this time. For jurisdictional purposes, it is clear that diversity of citizenship exists.

Between January 3, 1966 and approximately August 31, 1967 the defendant did render neurosurgical treatment to the plaintiff, diagnosing and operating on what he considered a brain stem glioma. On April 5, 1972, plaintiff became aware that he was suffering from an acoustic neuroma (a slow-growing benign brain tumor), which resulted in severe injuries to him. the parties obviously do not agree on the legal significance of these facts, but the dates involved are not disputed.

■ It is elementary that a federal district court sitting in South Carolina must apply the substantive law of South Carolina in a diversity case, *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the forum's choice of law rules. *Klaxon Co. v. Stentor Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In tort actions, the South Carolina Supreme Court has consistently adhered to the traditional *lex loci delicti* rule, thus applying the law of the state in which the alleged tort occurred. *E. g. Algie v. Algie,* 261 S.C. 103, 198 S.E.2d 529 (1973); *Oshiek v. Oshiek,* 244 S.C. 249, 136 S.E.2d 303 (1964). The law of Georgia will therefore control the question of liability in this action.

■ Even where foreign law governs the existence of a right of action, however, the question of whether the statute of limitations bars a remedy in a given case is ordinarily a matter determined solely by the law of the forum. South Carolina has long followed this practice in contract actions, *Sawyer, Wallace & Co. v. Macaulay,* 18 S.C. 543 (1883); *Alexander v. Burnet,* 5 Rich. 189 (1851); *Levy v. Boas,* 2 Bailey 217 (1831), and the rationale for those decisions is equally applicable in tort actions, although the Supreme Court has not yet had occasion to state that principle directly. Since a statute of limitations serves to protect both the parties and the local courts against the prosecution of stale claims, the only logical procedure is to allow the courts of each State to consult local law to determine which of the claims asserted there should be barred. See Restatement (Second) of Conflicts § 142 (1971). The law of Georgia, which is illustrative though obviously not controlling here, incorporates these same principles. *Taylor v. Murray,* 231 Ga. 852, 204 S.E.2d 747 (1974).

■ The South Carolina statute of limitations has been interpreted generally as affecting remedies rather than rights of action, *Webb v. Greenwood County,* 229 S.C. 267, 92 S.E.2d 688 (1956), and the provision involved here, S.C.Code § 10–143(5), is of broad application and certainly not so intimately connected with the statutory exposition of any right of action that noncompliance with its time limits could be said to extinguish both remedy and right simultaneously. See generally Restatement (Second) of Conflicts §§ 142–43 (1971). Moreover, a South Carolina statute of limitations is one of grace, permitting avoidance of liability, and it must be pleaded and becomes an affirmative defense with the burden of establishing it on the defendant. *South Carolina Mental Health Comm. v. May,* 226 S.C. 108, 83 S.E.2d 713 (1954).

It is undisputed that the applicable South Carolina statute of limitations is Section 10–143(5) which, in conjunction with Section 10–102, directs that a personal injury action such as this must be brought within six years "after the cause of action shall have accrued." Both the alleged misdiagnosis and the last treatment of the plaintiff by the defendant occurred more than six years prior to the filing of this action on April 4, 1974. If the cause of action is deemed to have accrued on either of those dates, the action is barred and defendant is

entitled to summary judgment. Plaintiff contends, however, that the cause of action did not accrue until the *discovery* of the alleged malpractice occurred on April 5, 1972. If this view is correct, the action is not barred and the motion for summary judgment must be denied. The single, controlling question in the decision of defendant's motion is therefore when, under the law of South Carolina, a cause of action for medical malpractice can be considered to have accrued.

Although the South Carolina statutes establish specific time limitations on the maintenance of many different types of actions, they are generally silent on the question of when a cause of action accrues. It is true that Sections 10–143(7) (actions for fraud), 10–143(9) (actions against corporate directors and stockholders), and 10.2–725 (actions for breach of warranty) direct that certain causes of action accrue and the statute of limitations begins to run only when the plaintiff discovers, or reasonably should have discovered, the particular act which gives rise to his action. Other sections, however, including the one applicable here, are silent on this critical question. Thus, the legislature has omitted definition of an element essential to the proper application to the statute and it is the obligation of the courts to supply it.

The South Carolina Supreme Court has frequently discussed accrual of causes of action, but never in connection with Section 10–143(5). The explanation is perhaps that there can be little doubt in most personal injury actions about when the statute of limitations begins to run and that South Carolina's six-year limitation is far longer than that imposed in most other jurisdictions. A medical malpractice case in which discovery of the alleged malpractice may not occur for six years is undoubtedly rather rare.

Defendant places great reliance on *Executors of Sinclair v. Bank of South Carolina*, 2 Strob. (33 S.C.L.) 344 (1848), where the court held that when "an agent is sued for negligence, . . . the gist of the action is the negligence, and the Statute of Limitations begins to run from the time of the negligence, and not from the time of the loss thereby occasioned." *Id.* at 345. *Sinclair,* however, dealt with the breach of an agent's duties; contemporary medical malpractice actions involve entirely different policies which could not have been considered in that 1848 decision. Additionally, the quoted language was dictum; the court held that the negligence and loss occurred simultaneously, so there could be no dispute as to when the cause of action accrued.

In *Livingston v. Sims*, 197 S.C. 458, 15 S.E.2d 770 (1941), the South Carolina Supreme Court stated:

A cause of action, as defined with reference to its elements, consists of a primary right of plaintiff, a corresponding duty of the defendant, and a wrong by the defendant in breach of such right and duty.

It follows that a cause of action for damages is not on the one hand the damage suffered by plaintiff, nor on the other hand the mere evidentiary facts showing the defendant's wrong; but it is the wrong itself done by defendant to plaintiff, that is, the breach of duty by the defendant to the plaintiff, whether it is the duty arising out of a contract or of tort. Every violation of a legal right imports damage and authorizes the maintenance of an action and the recovery of at least nominal damages, regardless of whether any actual damage has been sustained.

*Id.,* 15 S.E.2d at 772 (citations omitted). The gist of the quoted language is that the breach, and not the consequential damages, is the controlling factor in determining when the statutory period begins to run. *See also Brown v. Finger*, 240 S.C. 102, 124 S.E.2d 781 (1962) (action by husband for loss of consortium).

■ The language relating to "tort" is once again pure dicta, since the decision was clearly made with reference to a cause of action based on contract; the court even dismissed one case cited by the losing party on the grounds that it "has nothing to do with *contract*". 15 S.E.2d at 773. While a

breach of contract action may accrue when the breach occurs, such a rule of law and the general authority cited to support it cannot be used to compel the conclusion that a medical malpractice action cannot accrue at the time the malpractice is discovered.

Defendant also relies upon *Thomas v. Ervin*, Cheves 22 (S.C.1839), which involved a suit against an attorney whose negligent delay had caused a debt to become uncollectible. The court held that the cause of action against the attorney accrued in 1821, when he neglected to enter up a judgment obtained, rather than in 1836 when a court decision finally determined that the debt was uncollectible. *Thomas* did involve a form of professional malpractice, but the omission complained of was not such that it was unlikely to be discovered within the statutory period. Even if the decision in *Thomas* retains its force despite the passage of 135 years, to apply its rationale to medical malpractice situations where prompt discovery might be at best fortuitous would extend *Thomas* far beyond the category of actions which the court can be regarded as having contemplated in its decision.

After examining a substantial number of South Carolina decisions, including those cited by the defendant, the court must conclude that none is determinative of the issue raised by this motion. Although the South Carolina Supreme Court has frequently ruled on various aspects of the statute of limitations, it cannot be said to have decided the crucial question of whether a medical malpractice cause of action may be held to accrue upon discovery of the defendant's negligent acts.

█ In the absence of either legislative or judicial resolution of a question of state law, a federal court presented with the novel issue must assume certain obligations. As one court concluded, "In the absence of a state court ruling, our duty is tolerably

clear. It is to decide, not avoid the question." *Daily v. Parker*, 152 F.2d 174, 177 (7th Cir. 1945). In so deciding, however, a federal court must temper its actions with responsibility. It must heed neither the dictates of its own conscience nor the commands of federal law. Instead, the court must respond only as it believes the state judiciary would if faced with the same issue under identical circumstances. In that sense, the doctrine of *Erie v. Tompkins* commands not only that federal courts apply the law of the states in diversity actions but that they adopt the state's decision-making processes as well.[2]

█ The defendant of course contends that the South Carolina Supreme Court would decline to adopt the so-called "discovery" rule, emphasizing that Section 10–143 includes such a rule in Subsections (7) (fraud actions) and (9) (actions against corporate directors and stockholders) but lacks a "discovery" provision in subsection (5), which is applicable here. Such an argument, however, depends upon a mechanical, rather than a logical application of the traditional doctrine of *inclusio unius est exclusio alterius*, the inclusion of one is the exclusion of another. When legislative history is inadequate or unavailable, the inclusion of certain provisions in a statute may be *some* evidence that the exclusion of others was purposeful, but the weight accorded this evidence may vary. Often a court can logically conclude that the legislature might indeed have considered the same problem now presented in a judicial context; in such cases, the legislature's failure to enact a statutory remedy may be considered indicative of its intention that no remedy should be available.

█ The statutory "discovery" rules in Section 10–143(7) and (9), however, have existed in essentially identical form since at least 1870. *See* S.C.Code of Procedure of 1870 §§ 114 and 132, 14 S.C.Stat. 447, 450.

---

**2.** Of particular interest in this regard is *Todd v. Sandidge Construction Co.*, 341 F.2d 75 (4th Cir. 1964). There the Court of Appeals decided a novel question in South Carolina on August 3, 1974 only to have the South Carolina Su-

preme Court reach an identical conclusion on September 14, 1964. Neither court, it appears, was aware of the other's consideration of the issue until after both opinions had been filed.

Malpractice undiscoverable within the six year limitation imposed in South Carolina would be an unusual occurrence under any circumstances, and it appears highly unlikely that the legislature of 1870 could have foreseen and considered this problem, and even more improbable that the legislature actually did so. Having no indication that the legislature considered this issue at any later date, this court must conclude that the absence of a "discovery" rule for medical malpractice in Section 10–143 is not necessarily indicative of legislative disapproval of such a rule and that the South Carolina Supreme Court would therefore not feel compelled to refrain from adopting the "discovery" rule judicially.

It cannot be disputed that adoption of the "discovery" rule is a modern and growing trend in the law. A 1968 law review article properly identified at least twenty jurisdictions which had followed it and at least two more have done so since that date. *See* 28 Md.L.Rev. 47, 57 (1968); *Parker v. Vaughan*, 124 Ga.App. 300, 183 S.E.2d 605 (1971); *Forgay v. Tucker*, 128 Ga.App. 497, 197 S.E.2d 492 (1973); *Puro v. Henry*, 32 Conn.Sup. 118, 342 A.2d 65 (1975). A substantial majority of all the states now adhering to the "discovery" rule adopted it no earlier than 1960. A number of jurisdictions still retain the traditional rule that a cause of action for medical malpractice accrues at the moment the alleged malpractice occurred, *e. g. Hawks v. DeHart*, 206 Va. 810, 146 S.E.2d 187 (1966), but their ranks appear to be steadily decreasing as opportunities for reconsideration arise. Commentators have been outspoken in their support for adoption of the "discovery" rule. *See. e. g.*, Sacks, Statutes of Limitations for Undiscovered Malpractice, 16 Clev.-Mar.L.Rev. 65 (1967); Statute of Limitations—Medical Malpractice, 5 St. Mary's L.J. 206 (1973); Discovery Rule: Accrual of Cause of Action for Medical Malpractice, 25 Wash. & Lee L.Rev. 78 (1968); Limitations in Professional Malpractice Actions, 28 Md. L.Rev. 47 (1968).

Both opponents and supporters of the "discovery" rule contend that sound public policy and the demands of justice require that they prevail. On the one hand, opponents of the rule rely upon the general policies underlying all statutes of limitations, contending also that physicians, because of the critical importance of the services they render, are perhaps even more deserving than the general public of the protection afforded by such statutes. The validity of the latter distinction appears doubtful, but statutes of limitations as ordinarily applied are powerful and eminently logical rules of law. Their function was most cogently summarized in *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745, 752 (1968):

Statutes of limitations were intended to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution. . . . They afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses. Indeed, in such circumstances, the quest for truth might elude even the wisest court. The statutes are predicated on the reasonable and fair presumption that valid claims which are of value are not usually left to gather dust or remain dormant for long periods of time.

Advocates of the "discovery" rule, on the other hand, acknowledge the inevitable hardships experienced by doctors compelled to defend claims after considerable time has elapsed; yet, they contend, it is fundamentally unjust to bar the claim of a patient who was reasonably unaware or in fact could not have been aware within the statutory time limit that his doctor had so negligently treated him as to effect future inju-

ries. Where latent harm results from medical malpractice, even the six years afforded plaintiffs in South Carolina could well be insufficient for a layman to detect the existence of any injury or even to perceive the presence of symptoms which should lead him to seek additional medical assistance. To bar the claim of such a plaintiff seems far more unjust than to subject a physician to suit concerning treatment in a case for which the medical history is clouded by the passage of time. The very nature of medical evidence renders it most difficult for a dishonest plaintiff to fabricate and suggests that the negligent physician would be the principal beneficiary if the courts adopt a strict definition of when a cause of action for negligent malpractice accrues. Moreover, as the Supreme Court of New Jersey concluded when it adopted the "discovery" rule in *Fernandi v. Strully*, 35 N.J. 434, 451, 173 A.2d 277, 286 (1961): "If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better."

The defendant here points out that the Supreme Court of South Carolina has options other than the "discovery" rule should it decline to adopt the strictest definition of when a cause of action accrues. Some states have held that the statute of limitations begins to run when the doctor-patient relationship ceases (the "continuing treatment" rule) or, in cases where the physician has fraudulently concealed the facts of his malpractice, when the patient knew or should have known of such facts. The latter rule is a valuable one in the few cases in which it is applicable and is analogous to the "discovery" rule for fraud in S.C.Code Section 10–143(7). But both this and the "continuing" treatment rule seem to have arisen in many states as exceptions to the traditional rule of accrual, and by their very existence help to prove the unjust consequences of a strict interpretation. The "continuing treatment" rule in fact answers none of the basic objections voiced against the traditional rule and, although it is undoubtedly beneficial to some plaintiffs, on

the whole it is simply an aberrant form of the traditional rule which some courts seem to have adopted either to do justice in a specific case or to present the appearance of having effected a compromise between two antithetical rules.

■ Thus, it appears that the facts of this case would present the Supreme Court of South Carolina with a clear choice between adoption of the "discovery" rule and effective adherence to the view that a cause of action for medical malpractice accrues when the alleged malpractice occurs. It is the conclusion of this federal court that, given such a choice in the circumstances of this case, the South Carolina Supreme Court would elect to adopt the "discovery" rule and hold that, in medical malpractice cases, a cause of action accrues for purposes of the statute of limitations when the plaintiff discovers or by reasonable efforts should have discovered the facts which give rise to his cause of action.

Such a decision would be supported by a growing number of well-reasoned decisions by state courts throughout the United States and by the logical principle that statutes of limitations which are susceptible to judicial construction should not be applied mechanically but rather construed in the manner most consistent with both their underlying purposes and the requirements of substantial justice for all parties involved. Moreover, the federal courts have recognized the validity of the "discovery" rule in analogous situations. The United States Supreme Court concluded in *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), where a locomotive fireman with silicosis sued under the Federal Employer's Liability Act, that the statute of limitations began running only when the disease was discovered. The Court observed, "We do not think the humane legislative plan intended such consequences [*i. e.* barring the action] to attach to blameless ignorance." *Id.* at 170, 69 S.Ct. at 1025, 93 L.Ed. at 1292. The "discovery" rule repeatedly has been applied in cases arising under the Federal Tort Claims Act. *E. g.*

*Kossick v. United States*, 330 F.2d 933 (2d Cir. 1964), *cert. denied* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964); *United States v. Reid*, 251 F.2d 691 (5th Cir. 1958). Less than three months ago, the Court of Appeals for the Fourth Circuit applied the "discovery" rule in an action under 42 U.S.C. § 1983 brought by a woman who submitted to a sterilization operation which she had been told was reversible but which she later discovered to have rendered her permanently sterile. *Cox v. Stanton*, 529 F.2d 47 (4th Cir. 1975).

Finally, the adoption of the "discovery" rule would not be totally without precedent in South Carolina decisions. On several previous occasions the Supreme Court has endeavored to soften the harsh impact which the statute of limitations might otherwise have had on a plaintiff's right to proceed. For example, in a case involving riparian water rights, the court utilized a "continuing nuisance" theory to allow the plaintiff to recover for the impairment of his water rights for the six years immediately preceding, notwithstanding the fact that the tort (polluting the water) actually had begun many years earlier. *Conestee Mills v. City of Greenville*, 160 S.C. 10, 158 S.E. 113 (1931). *See also Sutton v. Catawba Power Co.*, 104 S.C. 405, 89 S.E. 353 (1916). Where a dam backed up water onto a plantation but the full effect of rendering the land unfit for cultivation was not ascertained until three years later, the six-year limitation was held not to begin to run until the latter time. *King v. United States*, 59 F. 9 (C.C.S.C.1893), *appeal dismissed*, 164 U.S. 703, 17 S.Ct. 1001, 41 L.Ed. 1182. Moreover, where several bales of cotton were held for safekeeping and destroyed, it was held that the statute of limitations began to run from the time of the loss, or at the latest, from the time the owner had *notice* of the loss rather than from the time demand for the goods was made. *Cohrs v. Fraser*, 5 S.C. 351 (1873). These cases are by no means identical to the present action, but they do indicate that the Supreme Court has avoided mere mechanical application of the statute of limitations in the past and would probably not be averse to doing so again.

It is with some reluctance that this court ventures to predict a decision which would best be rendered in the first instance by the South Carolina Supreme Court. The duty of a federal court sitting in a diversity case, however, is to accept the responsibility of determining and applying state law as best it can under the circumstances presented. Any future guidance from the highest court of the state on this most critical issue will of course be welcomed and heeded. For purposes of this action, however, this court must conclude for the reasons stated above that, if confronted with the circumstances of this case, the Supreme Court of South Carolina would adopt the "discovery" rule and hold that the plaintiff's action is not barred by the statute of limitations.

Defendant's motion for summary judgment must therefore be denied. It should be made entirely clear, however, that the "discovery" rule will not aid a plaintiff who, by reasonable efforts, should have discovered the alleged malpractice prior to the actual date of discovery. The court is unable, at this stage of the litigation, to express any opinion on the question of whether the plaintiff reasonably should have discovered the alleged malpractice before April 5, 1972. Nevertheless, if the defendant can, at any stage, establish that fact, the effect of the statute of limitations might obviously be altered even under the "discovery" rule. At this time, however, defendant's motion for summary judgment must be denied.

AND IT IS SO ORDERED.