## A10A0003. HOWELL v. ZOTTOLI.
(691 SE2d 564)

BLACKBURN, Presiding Judge.

In this medical malpractice action, Vicki Howell (individually and as adminstratrix of the estate of her late husband) appeals the summary judgment granted to Dr. Lawrence Zottoli, arguing that the statute of repose[1] had not run on her claims against Dr. Zottoli. Because Dr. Zottoli's alleged misdiagnosis and mistreatment began in 1996, we agree with the trial court that the complaint filed seven years later was barred by the five-year statute of repose. Accordingly, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[2]

So viewed, the evidence shows that in October 1996, Dr. Zottoli treated Howell's late husband for complaints concerning blood in his urine and performed a "Trucker's" physical examination on him. In March 1997, Dr. Zottoli prescribed decedent the weight-loss medication Pheniramine, but decedent never returned for a follow-up appointment. Over the next several years until decedent's death, Dr. Zottoli provided decedent several referrals and prescriptions even though decedent did not come into the doctor's office for in-office visits.

---

[7] *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002).
[1] OCGA § 9-3-71 (b).
[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

From decedent's first visit in 1996 until his demise in April 2001, he manifested several cardiovascular risk factors such as morbid obesity, smoking, high cholesterol, diabetes, high blood pressure, and a family history of coronary heart disease. Dr. Zottoli did not diagnose decedent as at high risk for coronary artery disease and did not counsel him on nor treat him for coronary artery disease.

The 39-year-old decedent died of coronary heart disease on April 13, 2001. On April 10, 2003, Howell sued Dr. Zottoli and others for medical malpractice, alleging that Dr. Zottoli failed to properly diagnose and treat the cardiovascular risk factors evident in decedent over the course of his care. An expert testified in an affidavit attached to the complaint and later in a deposition that Dr. Zottoli acted below the standard of care by failing to diagnose and treat decedent's evident cardiovascular risk factors (through counseling, medication, and support) over the five years Dr. Zottoli served as decedent's physician. This same expert testified without dispute that decedent's smoking, which had continued for more than 16 years prior to his death, caused decedent to have vascular disease from the commencement of that smoking, and that the continuation of that smoking only worsened the disease. Howell amended her complaint to add an allegation that Dr. Zottoli failed to warn decedent of the perils of cardiovascular risk factors.

Dr. Zottoli moved for summary judgment, arguing that the five-year statute of repose set forth in OCGA § 9-3-71 (b) barred Howell's claims. The trial court agreed and granted summary judgment to Dr. Zottoli, giving rise to this appeal.

OCGA § 9-3-71 provides in pertinent part:

> (a) Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.
> (b) Notwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.
> (c) Subsection (a) of this Code section is intended to create a two-year statute of limitations. Subsection (b) of this Code section is intended to create a five-year statute of ultimate repose and abrogation.
>
> . . .

Interpreting this statute, the Supreme Court of Georgia has held:

Under Georgia law, an action for medical malpractice must

be brought within five years from the date on which the negligent or wrongful act or omission occurred. OCGA § 9-3-71 (b). Unlike cases involving the medical malpractice statute of limitation, see OCGA § 9-3-71 (a), our focus in this case is on the date or dates on which appellants may have committed acts of professional negligence. The test for determining when OCGA § 9-3-71 (b)'s period of repose begins is based on the determination of when the negligent act causing the injury occurred.

(Footnote omitted.) *Schramm v. Lyon*.[3]

*Kaminer v. Canas*[4] held that, in cases alleging misdiagnosis and mistreatment, the statute of repose begins to run on the date of the initial misdiagnosis and failure to treat where the condition of the disease existed on that date. In *Kaminer*, the patient's condition of AIDS was misdiagnosed and therefore not treated for years, even though the patient exhibited symptoms of the disease from shortly after his birth. Although this misdiagnosis and failure to treat occurred each time the patient reappeared for treatment from the defendant doctors during a seven-year period, *Kaminer* affirmed summary judgment in favor of the defendant doctors, holding that in cases of misdiagnosis and mistreatment, the statute of repose begins to run on the date the initial misdiagnosis occurred. Id. Thus, although the focus of a statute of repose is generally the date of the alleged negligent act, a later negligent act cannot serve as the new starting point of the statute of repose where the negligent act is merely the repeated failure to diagnose and treat a continuing though worsening condition. Id.

Howell points to *Cleaveland v. Gannon*[5] as an example of a case where the statute of repose began to run anew on the date of a later act of misdiagnosis by the physician. But *Cleaveland* restricted its holding to circumstances where the later negligent act related to misdiagnosing and mistreating a completely *new* condition or injury. Id. Thus, where the pre-existing treatable kidney cancer in *Cleaveland* had metastasized into an untreatable cancer and now affected new and different organs, this *new* condition or injury of metastasis allowed the court to conclude that the failure to diagnose this *new* condition or injury constituted a separate negligent act that began to run the statute of repose anew. It was the development of this *new* condition or injury that distinguished *Kaminer* from the limited exception applied in *Cleaveland*. See *Cleaveland*, supra, 284 Ga. at

---

[3] *Schramm v. Lyon*, 285 Ga. 72, 73 (1) (673 SE2d 241) (2009).

[4] *Kaminer v. Canas*, 282 Ga. 830, 837-838 (3) (653 SE2d 691) (2007).

[5] *Cleaveland v. Gannon*, 284 Ga. 376, 378-379 (1) (667 SE2d 366) (2008).

378 (1) ("[t]here is a significant legal distinction between a patient's development of an entirely new medical condition, and his experiencing the proximate symptomatic consequences of the original misdiagnosis"); *Amu v. Barnes*[6] ("[t]he 'new injury' exception applies only 'in the most extreme circumstances' ").

Howell also points to *Schramm*, supra, 285 Ga. at 73-74 (1), as another example of an exception to the *Kaminer* rule (i.e., the rule that the running of the statute of repose starts on the date of the first misdiagnosis). *Schramm*, however, did not involve a misdiagnosis, but instead the patient there alleged that the physician, after a patient's spleen was removed, failed to *warn* the patient of the possibility that that spleen's absence could result in a serious injury or condition known as OPSI. Thus, the "new injury" exception, which applies to cases of misdiagnosis as described in *Cleaveland*, did not apply. See *McCord v. Lee*[7] ("the 'new injury' rule is limited to misdiagnosis cases involving a very discreet set of circumstances").

Moreover, the absence of the spleen was not a condition that in and of itself was causing damage or injury to the plaintiff in *Schramm*; thus, there was nothing for the physician to misdiagnose or mistreat. Rather, there was only the physician's failure to warn of a possible condition or injury that could result or occur *in the future*. This failure to *warn* of a possible or impending condition or injury constituted a new negligent act.

In reaching this conclusion, *Schramm* was careful to inform the bar that its holding was restricted to the particular facts of that case. *Schramm* emphasized this point by concluding with the statement:

> Importantly, our holding in this case is not the adoption of the continuing treatment doctrine so as to allow for the tolling of the statute of repose and should not be interpreted as to impose upon physicians a continuing duty to warn patients of risks from an existing condition at each subsequent visit.

Supra, 285 Ga. at 75 (3). Thus, if the condition was existing and simply continuing from prior visits, a defendant physician bears no "continuing duty to warn patients of risks from [that] condition at each subsequent visit." Id. Because the vascular disease here was present in decedent from the beginning of his treatment by Dr. Zottoli, the concept of failing to warn of a non-existent condition that could occur in the future simply did not apply in any case.

---

[6] *Amu v. Barnes*, 283 Ga. 549, 552 (662 SE2d 113) (2008).
[7] *McCord v. Lee*, 286 Ga. 179, 182 (684 SE2d 658) (2009).

Here, the only "new" condition or injury asserted by Howell was the death of the decedent. But no subsequent negligent act occurred after the development of this new condition, for the patient was already dead and no longer receiving medical services. Rather, as testified to by Howell's own expert, the undisputed evidence showed that the cardiac disease and attendant vascular damage had occurred and existed when the decedent began smoking cigarettes, which condition and injury continued uninterrupted from the time Dr. Zottoli first diagnosed and treated him. The condition or injury of damage to his vascular system did not become "new" over the years; rather, it simply worsened and eventually resulted in his demise, as in *Kaminer*. Because the condition or injury was already existing, the rule regarding diagnosing and treating the condition applied, not the rule regarding warning the decedent about a condition in the future. Thus, the statute of repose began to run from the date of the first misdiagnosis and mistreatment.

Moreover, in order for the "new injury" or "new condition" exception to apply, not only must there be evidence that the patient developed a "new injury" or "new condition," but he or she must also remain asymptomatic for a period of time following the misdiagnosis and mistreatment. *Amu*, supra, 283 Ga. at 552. Here, as alleged by Howell and as confirmed by her expert in his testimony, the condition of Howell's husband's cardiac risk factors and the attendant damage to his vascular system continued over the course of Dr. Zottoli's treatment of decedent. It simply worsened over time until it resulted in decedent's demise.

Accordingly, the statute of repose here did not begin to run anew from a negligent act that occurred after the development of a *new* condition or injury, but, as in *Kaminer*, ran from the initial date of misdiagnosis and failure to treat. Since this initial misdiagnosis and failure to treat occurred in 1996, the filing of the complaint some seven years later was barred by the five-year statute of repose in OCGA § 9-3-71 (b). The trial court did not err in granting summary judgment to Dr. Zottoli.

*Judgment affirmed. Barnes, J., concurs specially. Bernes, J., concurs in judgment only.*

BARNES, Judge, concurring specially.

I agree with the majority that the trial court properly granted summary judgment to the defendant doctor in this medical malpractice case, based on the statute of repose, but I concur specially as I do not agree with all that is said. We need not decide that Mr. Howell had an "injury" — vascular disease caused by years of smoking — when he first saw Dr. Zottoli, and need not consider whether the doctor's subsequent attenuated contacts with Howell caused "new

482

injuries." Instead, based on the expert's testimony that Zottoli breached the standard of care when he first saw Howell by failing to diagnose, treat, and warn Howell about his cardiovascular risk factors, the statute of repose began running from that initial visit. The doctor's continued failure to diagnose, treat, and warn Howell of his risk factors was simply continued negligent treatment for the same medical condition. Additionally, the record does not indicate that treatment protocols changed in the interim, a factor the Supreme Court of Georgia considered in *Schramm v. Lyon*, 285 Ga. 72 (673 SE2d 241) (2009) in determining that subsequent negligent acts began new periods of repose. While Howell may indeed have had vascular disease when he first saw Zottoli, that condition did not arise from Zottoli's negligence. Howell's risk factors by themselves were not injuries for which he could have sued Zottoli; the injury resulting from Zottoli's failure to diagnose, treat, and warn occurred when Howell suffered a fatal heart attack. But the statute of repose ran five years after Zottoli's initial negligence and Howell's suit was not filed within that time period.

"The statute of repose imposes an absolute limit on the time within which an action may be brought. Because the statute of repose is unrelated to the accrual of the cause of action, it runs from the date on which the negligent or wrongful act or omission occurred or was discovered." (Citation and punctuation omitted.) *Christian v. Atha*, 267 Ga. App. 186, 187 (598 SE2d 895) (2004); see also *Bush v. Sreeram*, 298 Ga. App. 68, 70 (3) (679 SE2d 87) (2009).

The majority's analysis of recent Supreme Court of Georgia medical malpractice cases involving the statutes of repose and limitation is thoughtful and scholarly. The distinctions between some of those cases are not easy to apply to new fact patterns. Compare *Kaminer v. Canas*, 282 Ga. 830, 834 (1) (653 SE2d 691) (2007) (statute of repose began running when plaintiff's doctors first failed to diagnose and treat pediatric AIDS); *Amu v. Barnes*, 283 Ga. 549, 551 (662 SE2d 113) (2008) (new statute of limitation began running when plaintiff's treatable colon condition developed into untreatable metastatic cancer, although two years passed after doctor's initial failure to diagnose); *Cleaveland v. Gannon*, 284 Ga. 376, 377 (1) (667 SE2d 366) (2008) (statute of limitation began when plaintiff's treatable kidney cancer developed into untreatable metastatic cancer); and *Schramm v. Lyon*, supra, 285 Ga. 72 (new statute of repose began running upon each failure to warn post-splenectomy plaintiff of infection risk).

As former Chief Justice Sears noted in her concurrences in *Amu*, 283 Ga. 554 and *Cleaveland*, 284 Ga. at 383, "no meaningful distinction" exists between those two cases and *Kaminer* except that the first two cases involved men with cancer and *Kaminer* involved

a child with AIDS. Fortunately, this court need not sort through this confusion here because the defendant's negligent act occurred more than five years before suit was filed, and thus the statute of repose applies.

For these reasons, I respectfully concur specially.

DECIDED FEBRUARY 24, 2010.

*Ashman, Lasky & Cooper, Jeffrey W. Lasky, James B. Stevens, Simon J. Weinstein*, for appellant.
*Brennan & Wasden, Joseph P. Brennan*, for appellee.