789 S.E.2d 88

**Virginia L. MARSHALL and Todd W. Marshall, Appellants,**

**v.**

**Kenneth A. DODDS, M.D., Charleston Nephrology Associates, LLC, Georgia Roane, M.D., and Rheumatology Associates, P.A., Respondents.**

Appellate Case No. 2014–001833.
No. 5403.

Court of Appeals of South Carolina.

Heard Feb. 11, 2016.
Decided May 4, 2016.
Rehearing Denied Aug. 19, 2016.

198

Blake A. Hewitt and John S. Nichols, both of Bluestein Nichols Thompson & Delgado, LLC, of Columbia; J. Edward Bell, III, of Bell Legal Group, of Georgetown; and C. Carter Elliott, Jr., of Elliott & Phelan, LLC, of Georgetown, all for appellants.

James B. Hood, Robert H. Hood, H. Cooper Wilson, III, and Deborah H. Sheffield, all of Hood Law Firm, LLC, of Charleston; and Thomas R. Goldstein, of Belk Cobb Infinger & Goldstein, of Charleston, for respondents Kenneth A. Dodds, M.D. and Charleston Nephrology Associates, LLC.

James E. Scott, IV, D. Jay Davis, Jr., Perry M. Buckner, IV, Stephen L. Brown, and Russell G. Hines, all of Young Clement Rivers, LLP, of Charleston, for respondents Georgia Roane, M.D. and Rheumatology Associates, P.A.

WILLIAMS, J.

In this medical malpractice case, Virginia and Todd Marshall (the Marshalls) appeal the circuit court's grant of summary judgment in favor of Dr. Kenneth A. Dodds; Charleston Nephrology Associates, LLC; Dr. Georgia Roane; and Rheumatology Associates, P.A. (collectively "Respondents"). The Marshalls argue the court erred in holding the statute of repose for a medical malpractice action begins to run after a medical professional's first alleged misdiagnosis. We reverse and remand.

**FACTS/PROCEDURAL HISTORY**

In February 2010, Virginia was diagnosed with Waldenström's macroglobulinemia—or lymphoplasmacytic lymphoma—a rare form of blood cancer. Prior to this diagnosis, Virginia was treated by two physicians, Dr. Dodds and Dr. Roane, both of whom she alleges committed medical malpractice by failing to diagnose her cancer on multiple occasions.

On September 15, 2004, Virginia visited Dr. Dodds, a nephrologist, after complaining of proteinuria, or increased protein levels in her urine. This visit marked the first time Dr. Dodds had evaluated Virginia since 1999. During this appointment, Dr. Dodds noted Virginia had a 24–hour urine test conducted on August 6, 2004, which revealed the protein levels in her urine were at 3.5 grams per day. At this point, Dr. Dodds did not order additional testing for Virginia's proteinuria. When Virginia visited Dr. Dodds again on November 14, 2004, she had no complaints and Dr. Dodds did not order additional testing for her proteinuria.

At a February 7, 2005 appointment, Dr. Dodds ordered that Virginia again receive a 24–hour urine test. On February 9, 2005, the test indicated Virginia's protein levels were at approximately 3.1 grams per day. Dr. Dodds did not order any further testing. During her last visit on September 5, 2005, Virginia's 24–hour urine test indicated the protein levels in her urine had increased to 4.2 grams per day. Dr. Dodds continued treatment for proteinuria, but he did not administer any additional testing.

During the time she was seeing Dr. Dodds for her proteinuria, Virginia was also under the care of Dr. Roane, a rheumatologist. In 2000, Dr. Roane diagnosed Virginia with mixed connective tissue disease (MCTD) and treated her for the suspected MCTD from 2000 to 2007. On April 29, 2005, while Dr. Roane was continuing treatment for MCTD, Virginia presented symptoms including elevated sedimentation rates, enlarged lymph nodes, proteinuria, fever, and chills. At an appointment on September 29, 2005, a 24–hour urine test indicated Virginia's protein levels increased from 3.5 to 4.2 grams per day from the previous year. Dr. Roane, however, did not order further testing.

As a result of the alleged failures to diagnose Virginia's cancer during her treatments, the Marshalls pursued medical malpractice and loss of consortium actions against Dr. Dodds, Dr. Roane, and their respective practices. The Marshalls claimed Dr. Dodds was negligent in failing to recognize the signs and symptoms of elevated proteins in the urine and failing to order proper testing—including a urine protein electrophoresis test or a serum protein electrophoresis test—

to determine if the type of protein in Virginia's urine was cancerous. Similarly, the Marshalls alleged Dr. Roane was negligent because she continued to misdiagnose Virginia's cancer as MCTD at the April 29, 2005 appointment. The Marshalls also claimed Dr. Roane failed to order further testing for Virginia's increased protein levels when she was no longer under the care of her nephrologist, Dr. Dodds, on and after the September 29, 2005 appointment.

On February 7, 2011, the Marshalls contemporaneously filed a notice of intent to file suit (NOI), two expert witness affidavits, and a summons and complaint against Dr. Dodds and Charleston Nephrology Associates, LLC. Subsequently, the Marshalls contemporaneously filed an NOI, an expert witness affidavit, and a summons and complaint against Dr. Roane and Rheumatology Associates, P.A. on April 8, 2011. The circuit court granted the Marshalls' motions to consolidate the two cases for purposes of discovery and trial.

After the parties participated in discovery, Respondents filed separate motions for summary judgment. Respondents argued the statute of repose for medical malpractice actions— section 15-3-545(A) of the South Carolina Code (2005)— barred the Marshalls' claims because they brought their action more than six years after Dr. Dodds and Dr. Roane's first alleged negligent omissions in failing to diagnose her cancer. In their motion, Dr. Dodds and his practice asserted the alleged first misdiagnosis, on September 15, 2004, occurred more than six years prior to the commencement of the action against them. Likewise, Dr. Roane and her practice contended the Marshalls' own expert opined Virginia's cancer would have been discoverable by Dr. Roane as early as February 2002—nine years before the commencement of the malpractice action.

On May 1, 2014, the circuit court granted Respondents' motions for summary judgment, holding the Marshalls' complaints were untimely because the statute of repose began to run after the first alleged misdiagnoses by Dr. Dodds and Dr. Roane. In reaching its conclusion, the court found *Howell v. Zottoli*, 302 Ga.App. 477, 691 S.E.2d 564 (2010), persuasive. In *Howell*, the Georgia Court of Appeals concluded "a later negligent act cannot serve as the new starting point of the

statute of repose where the negligent act is merely the repeated failure to diagnose and treat a continuing though worsening condition." 691 S.E.2d at 566. The circuit court found the Marshalls pled multiple failures by Dr. Dodds and Dr. Roane to diagnose Virginia's cancer that was likely present throughout the course of their treatment. Therefore, relying upon *Howell,* the court reasoned Dr. Dodds and Dr. Roane's subsequent misdiagnoses were merely a continuation of their first misdiagnoses, not distinct acts of negligence that could serve as new trigger points for the statute of repose.

The Marshalls filed a motion to alter or amend judgment, and the circuit court denied their motion in a Form 4 order on August 7, 2014. This appeal followed.

**STANDARD OF REVIEW**

■ "An appellate court reviews a grant of summary judgment under the same standard applied by the [circuit] court pursuant to Rule 56, SCRCP." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.,* 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that ... no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Determining the proper interpretation of a statute is a question of law, and th[e appellate c]ourt reviews questions of law de novo." *Lambries v. Saluda Cty. Council,* 409 S.C. 1, 7, 760 S.E.2d 785, 788 (2014) (quoting *Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008)).

**LAW/ANALYSIS**

The Marshalls argue the circuit court erred in holding the statute of repose for their medical malpractice claims began to run after Dr. Dodds and Dr. Roane's first alleged misdiagnoses. We agree.

■ "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the [General Assembly]." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "The [General Assembly]'s intent should be ascertained primarily from the plain language of the statute." *Ex parte*

*Cannon,* 385 S.C. 643, 655, 685 S.E.2d 814, 821 (Ct.App.2009) (quoting *Georgia–Carolina Bail Bonds, Inc. v. Cty. of Aiken,* 354 S.C. 18, 23, 579 S.E.2d 334, 336 (Ct.App.2003)). "Words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Sloan v. Hardee,* 371 S.C. 495, 499, 640 S.E.2d 457, 459 (2007). "If, however, the language of the statute gives rise to doubt or uncertainty as to legislative intent, the construing court looks to the statute's language as a whole in light of its manifest purpose." *Ex parte Cannon,* 385 S.C. at 655, 685 S.E.2d at 821. "The construing court may additionally look to the legislative history when determining the legislative intent." *Id.*

 "A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time." *Langley v. Pierce,* 313 S.C. 401, 404, 438 S.E.2d 242, 243 (1993) (quoting *First United Methodist Church v. U.S. Gypsum Co.,* 882 F.2d 862, 866 (4th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990)). "[A] statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body." *Id.* (quoting *First United Methodist Church,* 882 F.2d at 866).

 In South Carolina, medical malpractice actions are governed by a six-year statute of repose. Subsection 15–3–545(A) provides the following:

> [A]ny action, other than actions controlled by subsection (B), to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider ... must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from the date of discovery or when it reasonably ought to have been discovered, *not to exceed six years from date of occurrence,* or as tolled by this section.

(emphasis added). The statute's six-year period "constitutes an outer limit beyond which a medical malpractice claim is barred, regardless of whether it has or should have been

discovered." *Hoffman v. Powell*, 298 S.C. 338, 339–40, 380 S.E.2d 821, 821 (1989).

Because the statute of repose does not explicitly define "occurrence," we believe a review of the legislative history is instructive. Prior to the enactment of section 15–3–545(A), all personal injury actions were subject to a six-year statute of limitations, requiring such suits be brought within six years "after the cause of action shall have *accrued.*" Code of Laws of S.C. § 10–102, –143(5) (1962) (emphasis added). Nevertheless, a jurisdictional split began to emerge concerning the definition of "accrued" in various state statutes of limitations in the context of medical malpractice. *See, e.g., Gattis v. Chavez*, 413 F.Supp. 33, 38 (D.S.C.1976) (providing a discussion on the jurisdictional split). Some courts retained the traditional view that "accrued" meant the time of the medical professional's alleged negligent act or omission, while others steadily began to hold that, pursuant to the "discovery rule," it meant when the plaintiff discovered or should have discovered the injury that arose from such negligence. *See id.*

In *Gattis*, the U.S. District Court for the District of South Carolina held that, if faced with the question, our supreme court would judicially adopt the discovery rule. 413 F.Supp. at 39. The following year, the General Assembly adopted the discovery rule with a newly created statute of limitations for medical malpractice actions. *See* Act No. 182, 1977 S.C. Acts 453 (stating the action must be commenced "within three years from the date of the treatment, omission[,] or operation giving rise to the cause of action or three years from the date of discovery or when it reasonably ought to have been discovered"). However, because the discovery rule arguably would produce great uncertainty—allowing plaintiffs to bring actions against medical professionals at any time in the future—the General Assembly also created a statute of repose, barring all causes of action brought more than six years following an "occurrence." *See id.; see also Hoffman*, 298 S.C. at 341–42, 380 S.E.2d at 822–23 (noting other states enacted statutes of repose to curtail the "long tail" exposure to malpractice claims brought about by the discovery rule).

■ Based upon the legislative history of the statute of repose and our precedents, we find that "occurrence"—for

purposes of the statute—means the time of an alleged negligent treatment, omission, or operation by a medical professional. *See, e.g., O'Tuel v. Villani*, 318 S.C. 24, 27, 455 S.E.2d 698, 700 (Ct.App.1995) (holding the occurrence that triggered the statute of repose was on the date of the child's birth, when a physician failed to perform a caesarean delivery, not seven years later when the parents discovered the child had learning disabilities), *overruled on other grounds by I'On, LLC v. Town of Mt. Pleasant*, 338 S.C. 406, 423 & n. 12, 526 S.E.2d 716, 725 & n. 12 (2000); *Johnson v. Phifer*, 309 S.C. 505, 507, 424 S.E.2d 532, 534 (Ct.App.1992) (concluding the statute of repose barred a patient's claim against a dentist filed in 1990 when the alleged negligent treatment occurred from 1974 to 1977).

 Consequently, the statute of repose begins to run at the time of an alleged negligent act or omission by a medical professional upon which a plaintiff seeks to impose liability in a cause of action for malpractice. *See Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 537, 725 S.E.2d 693, 696 (2012) ("A plaintiff, to establish a cause of action for negligence, must prove the following four elements: (1) a duty of care owed by defendant to [the] plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." (emphasis omitted) (quoting *Thomasko v. Poole*, 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002))). Therefore, we hold that when a plaintiff alleges a misdiagnosis or failure to diagnose a condition within the six-year period—which an expert witness opines to be a breach of the physician's duty of care [1]—the statute of repose does not bar the cause of action merely because the physician previously misdiagnosed the condition outside the repose period.

Turning to the facts of the instant case, the Marshalls concede they may not seek to impose liability on Dr. Dodds and Dr. Roane for negligent acts or omissions made outside

---

1. *See* S.C.Code Ann. § 15–36–100(B) (Supp.2015) (providing that a plaintiff in a professional negligence action "must file[,] as a part of the complaint[,] an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit").

the repose period. The Marshalls, however, alleged specific dates and appointments within the six-year repose period when Dr. Dodds and Dr. Roane failed to diagnose Virginia's cancer. The Marshalls' expert witnesses—Dr. Barry Singer and Dr. Robert Luke—opined that Dr. Dodds breached his duty of care at the February and September 2005 appointments, noting the protein levels in Virginia's urine were elevated from previous tests and, thus, should have signaled to Dr. Dodds that cancerous protein was present and further testing was required. Likewise, the Marshalls' other expert, Dr. Thomas Zizic, opined that Dr. Roane breached her duty of care at the April 29, 2005 appointment by prescribing potent immunosuppressants when Virginia did not have MCTD. Dr. Zizic also opined that Dr. Roane was negligent during and after the September 29, 2005 appointment—when Virginia was no longer under the care of Dr. Dodds—because she continued to misdiagnose Virginia's cancer as MCTD and was under a duty to perform further testing after learning Virginia's urine protein levels were elevated.

Additionally, the Marshalls properly alleged each element of their causes of action for medical malpractice: (1) Dr. Dodds and Dr. Roane owed a duty of care to Virginia; (2) they breached that duty in failing to diagnose her cancer; (3) Virginia suffered damages, including pain and suffering, lost wages, and medical expenses; and (4) Dr. Dodds and Dr. Roane's negligence proximately caused Virginia's damages. Therefore, we find the Marshalls' medical malpractice claims for alleged negligent acts occurring within six years of commencing the instant actions against Respondents are not barred by the statute of repose.

Nevertheless, Respondents contend Dr. Dodds and Dr. Roane's alleged subsequent misdiagnoses were merely a continuation of their first misdiagnoses, not new and independent negligent acts or omissions that "retrigger" the statute of repose. According to Respondents, South Carolina's statute of repose begins to run after a medical professional's first misdiagnosis. In making this argument, Respondents—like the circuit court—rely upon the Georgia Court of Appeals' decision in *Howell.*

In *Howell,* a patient was treated by a doctor in October 1996 after complaining of blood in his urine. 691 S.E.2d at 565. Although the patient never returned for in-office appointments, the doctor continued to provide him with several referrals and weight-loss prescriptions. *Id.* In 2001, the patient died of coronary heart disease, and his wife subsequently sued the doctor in 2003 for medical malpractice. *Id.* The decedent's wife alleged the doctor failed to properly diagnose and treat her husband's multiple cardiovascular risk factors present during the course of his care, including "morbid obesity, smoking, high cholesterol, diabetes, high blood pressure, and a family history of coronary heart disease." *Id.* The trial court, however, granted summary judgment in favor of the doctor, holding Georgia's five-year medical malpractice statute of repose barred her suit. *Id.*

On appeal, the Georgia Court of Appeals affirmed, finding Georgia's statute of repose—which is based upon when the negligent act causing the patient's injury occurred—began to run on the date of the doctor's first misdiagnosis of the decedent's condition. *Id.* at 566–67. In reaching its decision, the court relied upon the Supreme Court of Georgia's directive that, in cases of a misdiagnosis or failure to diagnose a continuing condition, "[t]he misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis." *Kaminer v. Canas,* 282 Ga. 830, 653 S.E.2d 691, 694 (2007) (quoting *Frankel v. Clark,* 213 Ga.App. 222, 444 S.E.2d 147, 149 (1994)).[2]

We find Respondents' interpretation of subsection 15–3–545(A) is unduly expansive and their reliance upon *Howell* is misplaced. *See Sloan,* 371 S.C. at 499, 640 S.E.2d at 459 (stating courts must not resort to subtle or forced construction to expand a statute's operation). Our statute of repose differs from Georgia's because it solely focuses on the time of the medical professional's negligent act or omission, not the patient's injury. A patient's damages in the case of a prior misdiagnosis discovered later with a proper diagnosis often include death, pain and suffering, lost wages, and medical

---

**2.** In *Kaminer,* the court held Georgia's statutes of limitations and repose in most misdiagnosis cases "begin to run simultaneously on the date that the doctor negligently failed to diagnose the condition and, thereby, injured the patient." 653 S.E.2d at 694.

expenses. Unlike the Supreme Court of Georgia, we find a patient's injury and ensuing damages in these situations are not the misdiagnosis itself, but rather are a *result* of the misdiagnosis. A misdiagnosis is simply the negligent act or omission that gives rise to the cause of action for malpractice. Therefore, we find *Howell* unpersuasive. Accordingly, we reject Respondents' argument and hold the circuit court erred in relying upon Georgia law to determine South Carolina's statute of repose begins to run after a medical professional's first misdiagnosis.

Respondents also argue our interpretation of South Carolina's statute of repose for medical malpractice actions would effectively be an adoption of the continuous treatment rule that was rejected by our supreme court in *Harrison v. Bevilacqua*, 354 S.C. 129, 580 S.E.2d 109 (2003). Under the continuous treatment rule, when a patient's illness or injury imposes upon his doctor a duty to continue treatment, the statutes of limitation and repose do not begin to run until the termination of the doctor's treatment. *Id.* at 135, 580 S.E.2d at 112. The continuous treatment rule is a tolling mechanism that our supreme court found would run afoul of the General Assembly's objective to limit liability with the medical malpractice statutes of limitations and repose. *Id.* at 138, 580 S.E.2d at 114. Our interpretation, however, is entirely consistent with *Harrison* because we are not suggesting the statute of repose is tolled until the termination of a physician's course of treatment. To the contrary, we hold the statute begins to run at the time of a medical professional's alleged negligent act or omission for which the plaintiff seeks to impose liability without regard to when the course of treatment ended.

In our view, the first misdiagnosis rule advocated by Respondents would allow medical professionals to escape liability for subsequent acts of negligence—even when they clearly constitute a breach of the standard of care—only because they failed to properly diagnose the patient's condition in the past. It is possible for a patient to continually present symptoms, or even new or worsening symptoms, that should alert the physician to perform additional testing or reevaluate a prior diagnosis. *See Kaminer*, 653 S.E.2d at 698 (Hunstein, J., dissenting) ("[I]t is possible for a doctor to misdiagnose a patient more than once in the course of treatment, where new or more

severe symptoms would, under the relevant standard of care, require a reassessment of the initial diagnosis."). Under the rule advocated by Respondents, however, physicians—to be immune from suit—could simply point to a time outside the limitations period when they examined the patient and should have diagnosed the condition. We do not believe the General Assembly intended such a result when it enacted the statute of repose for medical malpractice actions. *See Hodges,* 341 S.C. at 85, 533 S.E.2d at 581 (holding "[t]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the [General Assembly]").

## CONCLUSION

Based on the foregoing analysis, we hold the circuit court erred in finding the statute of repose for medical malpractice actions begins to run after a medical professional's first alleged misdiagnosis. Therefore, we reverse the circuit court's grant of summary judgment in favor of Respondents and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

LOCKEMY and McDONALD, JJ., concur.