# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Virginia L. Marshall and Todd W. Marshall,
Respondents,

v.

Kenneth A. Dodds, M.D., Charleston Nephrology
Associates, LLC, Georgia Roane, M.D., and
Rheumatology Associates, P.A.,  Petitioners.

Appellate Case No. 2016-001936

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

---

Opinion No. 27873
Heard May 1, 2018 – Filed March 27, 2019

---

## AFFIRMED AS MODIFIED

---

Robert H. Hood, James Bernard Hood and Deborah
Harrison Sheffield, all of Hood Law Firm, of Charleston,
Stephen L. Brown, D. Jay Davis, Jr., James E. Scott IV,
Perry M Buckner IV, and Russell G. Hines, all of Young
Clement Rivers, LLP, of Charleston, all for Petitioners.

Blake A. Hewitt, of Bluestein Thompson Sullivan, LLC,
of Columbia and J. Edward Bell III, of Bell Legal Group,

and C. Carter Elliott, Jr., of Elliott & Phelan, both of Georgetown, all for Respondents.

---

**JUSTICE HEARN:** Virginia Marshall and her husband filed a medical malpractice claim against Dr. Kenneth Dodds (a nephrologist), Dr. Georgia Roane (a rheumatologist), and their respective practices, alleging negligent misdiagnosis against both Dodds and Roane. The circuit court granted Dodds' and Roane's motions for summary judgment, ruling these actions were barred by the statute of repose. The Marshalls appealed, and the court of appeals reversed and remanded the cases for trial. *Marshall v. Dodds*, 417 S.C. 196, 789 S.E.2d 88 (Ct. App. 2016). We affirm as modified, holding the Marshalls' claims for negligent acts that occurred within the six-year repose period are timely.

## FACTS/PROCEDURAL HISTORY

In February 2010, Marshall was diagnosed with Waldenstrom's macroglobulinemia, also known as lymphoplasmacytic lymphoma, a rare type of blood cancer. Before this diagnosis, she was treated by Dodds and Roane, who the Marshalls contend committed malpractice by failing to diagnose her cancer. The Marshalls filed suit against Dodds on February 7, 2011, and against Roane on April 8, 2011. The actions were consolidated for discovery, and both doctors moved for summary judgment, contending the claims were time-barred by the six-year statute of repose.

### A. Treatment by Dodds

Dodds first evaluated Marshall on July 16, 1999, two days after she was admitted to Roper Hospital for a persistent high fever. During her hospitalization, testing revealed elevated sedimentation rates (a measure of the speed at which red blood cells in a tube of blood fall to the bottom of the tube) and proteinuria (elevated protein levels in the urine). On September 15, 2004, Marshall returned to Dodds for the first time since the 1999 visit, and during this appointment, Dodds reviewed a 24-hour urine test performed a month prior that revealed urine protein levels of 3.5 grams per day. This level of protein established Marshall had proteinuria at that time. Dodds did not order further testing during the September 2004 visit but instead started Marshall on Diovan, which is typically prescribed for hypertension. When Marshall returned to Dodds two months later, she had no complaints, and Dodds ordered no additional testing. Thereafter, on February 9, 2005, Dodds treated Marshall again, ordering a 24-hour urine test which revealed proteinuria, with

protein levels of 3.1 grams per day. Despite her protein levels remaining elevated, Dodds did not order further testing. Marshall's final visit to Dodds was on September 5, 2005, where another 24-hour urine test revealed her urine protein levels had increased to 4.2 grams per day. However, Dodds did not administer any further testing. The Marshalls' actions against Dodds are based solely upon Dodds' alleged negligence on and after February 9, 2005. They allege Dodds was negligent in failing to recognize the signs and symptoms of proteinuria and in failing to order proper testing—a urine protein electrophoresis test (UPEP) and a serum protein electrophoresis test (SPEP)—which allegedly would have revealed the type of protein in Marshall's urine was cancerous. Apparently cognizant of the statute of repose, the Marshalls did not allege any negligence for acts that occurred more than six years from when the complaint was filed on February 7, 2011.

Dodds moved for summary judgment, asserting any alleged negligence first occurred more than six years prior to the Marshalls filing suit. Citing deposition testimony from the Marshalls' own experts, Dodds contended the claims were time-barred. One expert, Barry L. Singer, M.D., a specialist in oncology, testified Marshall likely had blood cancer in 2004, which would have been revealed then if a UPEP or SPEP test had been performed. He further testified that in 2004, Dodds negligently failed to diagnose the cancerous protein in Marshall's urine.

Another expert retained by the Marshalls, nephrologist Robert G. Luke, M.D., noted in his deposition and pre-suit affidavit the following standard of care for nephrologists:

1. If significant proteinuria is present, the nephrologist must determine the cause, which requires the nephrologist to order proper testing to rule out certain causes, including cancerous protein.

2. If routine tests—such as a 24-hour urine test—have inconsistent results, the nephrologist has a duty to order UPEP and SPEP tests to determine whether the protein is cancerous.

In his deposition, Luke reviewed Marshall's course of treatment with Dodds spanning four office visits from September 15, 2004, through September 15, 2005. During that time, Marshall took the prescription medication Diovan, as prescribed by Dodds, which should have lowered her protein levels. Despite taking this medication, all her 24-hour urine tests showed proteinuria. As a result, Luke testified that Dodds negligently failed to properly monitor Marshall's response to Diovan because otherwise, he would have realized there was no change in her urine protein

levels. Further, Luke opined Dodds was negligent in failing to recognize that the continued proteinuria could constitute cancer and failing to order UPEP and SPEP testing, which would have revealed cancerous protein.

Luke also opined Dodds was negligent in scheduling a six-month follow-up appointment after Marshall's September 2005 visit when a one-month check-up was warranted. However, Marshall did not go to her follow-up appointment. Luke then testified, "I have said ten times [in this deposition] that during the first two visits, [Dodds] was outside the standard of care without following up for the diagnosis of the proteinuria. The other business about responding to Diovan is a relatively minor element of the whole thing." Additionally, Luke noted, "I said the first two visits were enough information for further studies to be done, and I think that's the main evidence." The "first two visits" referred to by Luke were in September and November of 2004, both over six years before the actions were commenced against Dodds on February 7, 2011. However, Luke opined Dodds should have revisited his diagnosis in February and September of 2005 after Marshall's protein levels remained elevated. These alleged acts of negligence occurred within the repose period.

The circuit court concluded Dodds' alleged misdiagnoses after February 7, 2005, were a continuation of his previous alleged misdiagnoses and were not distinct acts of negligence that could serve as new trigger points of the statute of repose. The court found the statute of repose applicable to the Marshalls' claims against Dodds began to run prior to February 7, 2005, and therefore, time-barred their claims.

*B. Treatment by Roane*

Dr. Roane began treating Marshall in 2000 and in that year diagnosed Marshall with mixed connective tissue disease (MCTD), a rare autoimmune disease. This diagnosis was based in part upon laboratory studies evincing low complements (the complement system helps the body defend against infection) and the aforementioned elevated sedimentation rates and proteinuria. Roane treated Marshall for MCTD until 2007.

Beginning in 2000, Roane prescribed a drug named Imuran and increased the dosage in April 2001 and again in February 2002. During the time Marshall took Imuran, there were no changes in her sedimentation rates or proteinuria, but the complement levels improved. In August 2003, Roane stopped prescribing Imuran and prescribed CellCept. During the 2002-2003 time frame, Roane ordered no testing other than 24-hour urine tests and the same lab studies. On April 29, 2005,

Marshall visited Roane with symptoms including elevated sedimentation rates, enlarged lymph nodes, proteinuria, fever, and chills. Five months later, on September 29, 2005, Roane ordered another 24-hour urine test which revealed Marshall's proteinuria had increased from 3.5 grams per day to 4.2 grams per day over the prior year. However, despite this increase in protein levels when the opposite should have occurred if Marshall actually suffered from MCTD, Roane did not order further testing. Thereafter, Marshall returned to Roane in 2006 and ceased treatment a year later. The Marshalls claim Roane negligently misdiagnosed her cancer as MCTD and negligently failed to order additional testing after the proteinuria was still present at the September 29, 2005 office visit. The Marshalls did not commence their actions against Roane until April 8, 2011, and accordingly, the claims against Roane are only based on conduct that occurred within six years.

To pursue their claims against Roane, the Marshalls retained Thomas M. Zizic, M.D., an expert in the field of rheumatology. In his deposition, Zizic was particularly critical of Roane's failure to reassess Marshall's condition beginning in 2002 and 2003, especially since her proteinuria, high sedimentation rate, and low complements had not changed even with an increased dosage of Imuran. Specifically, he testified, "I'm very critical at '03. I'm critical at the point where she goes to maximal Imuran in February of '02, 150 milligrams, and still things don't change in terms of the laboratory parameters we've been talking about." Zizic further testified that when the maximal dosage of Imuran was being administered in 2002 and "it still hasn't changed, then at that point you've got to re-workup the patient." Zizic testified this "re-workup" would consist of almost a dozen tests comprising a "complete antibody profile," as well as the aforementioned UPEP and SPEP tests, which if administered in 2003 would have revealed Marshall was not suffering from MCTD.

Additionally, Zizic testified that Roane breached the standard of care as far back as 2002 and 2003 by not engaging in a "reconsideration of where [Roane] was in the treatment of the patient" and that if the "re-workup" had been done in August 2003, Marshall's blood cancer would have been discovered. Finally, Zizic testified that from 2004 until treatment ended in 2007, Roane should have administered yearly laboratory studies until reaching a definitive diagnosis of Marshall's blood cancer. While Zizic was critical of acts prior to 2005, the failure to administer these tests constituted alleged negligence within six years from when the Marshalls commenced their actions against Roane on April 8, 2011.

The Marshalls focus solely upon the negligent conduct of Roane occurring on and after April 29, 2005, contending separate repose periods were triggered by each

misdiagnosis when the standard of care required Roane to reconsider the original diagnosis. The circuit court disagreed, concluding the sole trigger date of the six-year statute of repose was prior to April 8, 2005, and because the actions against Roane were not commenced until April 8, 2011, the claims were time-barred.

### C. Court of Appeals' Decision

The Marshalls appealed both rulings, and the court of appeals reversed, holding even though there was evidence Dodds and Roane negligently misdiagnosed Marshall's condition before February 7, 2005, and April 8, 2005, respectively, a new statute of repose period was triggered by each subsequent misdiagnosis because each act was a separate occurrence of negligence. *Marshall*, 417 S.C. at 205, 789 S.E.2d at 92. We granted Dodds' and Roane's petitions for a writ of certiorari to review the court of appeals' decision.

## ISSUE

In a medical malpractice case where evidence exists that doctors breached the standard of care on multiple occasions, does the statute of repose begin to run with each breach, resulting in recent breaches being actionable even though older ones are barred?

## STANDARD OF REVIEW

An appellate court employs the same lens as the trial court in reviewing a grant of summary judgment. *Doe ex rel. Doe v. Wal-Mart Stores, Inc.*, 393 S.C. 240, 244, 711 S.E.2d 908, 910 (2011). While the facts are viewed in the light most favorable to the nonmoving party, the interpretation of a statute is a question of law decided without any deference to the court below. *Buchanan v. S.C. Prop. & Cas. Ins. Guar. Ass'n*, 424 S.C. 542, 547, 819 S.E.2d 124, 126 (2018); *Wogan v. Kunze*, 379 S.C. 581, 585, 666 S.E.2d 901, 903 (2008).

## DISCUSSION

The statute of repose for medical malpractice claims requires an action to be commenced within "six years from date of occurrence." S.C. Code Ann. § 15-3-545(A) (2005). Subsection 15-3-545(A) provides:

> [T]o recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider . . . acting

within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, *not to exceed six years from date of occurrence*, or as tolled by this section.

(emphasis added). The six-year period "constitutes an outer limit beyond which a medical malpractice claim is barred, regardless of whether it has or should have been discovered." *Hoffman v. Powell*, 298 S.C. 338, 339–40, 380 S.E.2d 821, 821 (1989). Initially, the statute clearly sets forth the triggering date as the "date of occurrence." However, we note what this provision does not say—the date of the *first* occurrence. Thus, we must determine whether the Marshalls can pursue a negligence claim based on acts occurring within the six-year repose period when older acts occurred outside the time period. To address this question, we must first discuss the import of the continuous treatment rule and continuous tort doctrine, as we have previously rejected both doctrines in the medical malpractice context. *See Harrison v. Bevilacqua*, 354 S.C. 129, 580 S.E.2d 109 (2003). Dodds and Roane contend the court of appeals' decision breathes new life into these two rules previously rejected by this Court.[1] However, the Marshalls assert both doctrines are irrelevant to the inquiry before us. We agree with the Marshalls that neither doctrine is invoked by our decision today.

In *Harrison*, we recognized,

The so-called "continuous treatment" rule as generally formulated is that if the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

---

[1] The dissent likewise posits that we have resurrected these two doctrines today, a characterization of our opinion with which we disagree. Our differences stem from how we view the text of our statute of repose, and we maintain our rejection of judicially engrafted tolling principles.

*Id.* at 135, 580 S.E.2d at 112. At its core, the continuous treatment rule is a tolling mechanism, permitting plaintiffs to recover for malpractice which otherwise would be outside the limitations period because the clock does not begin until treatment has ended. Accordingly, the continuous treatment rule acts as a "last occurrence rule," where the plaintiff can bootstrap prior, untimely acts of alleged negligence to ones brought within the limitations period provided the conduct is part of a continuous course of treatment. *See Caughell v. Grp. Health Co-op. of Puget Sound*, 876 P.2d 898, 905 (Wash. 1994) (noting under the continuous treatment rule the statute of limitations begins to run on "the *last* negligent act committed by the defendant"). Many courts across the country have dealt with the continuous treatment rule, but because it is a tolling mechanism, it typically appears in a statute of limitations analysis. *See, e.g.*, *Parr v. Rosenthal*, 57 N.E.3d 947, 959 (Mass. 2016) (adopting the continuous treatment rule and expressly holding it "does not affect the statute of repose…"); *Forshey v. Jackson*, 671 S.E.2d 748, 756 (W.Va. 2008) (citing 61 Am.Jur.2d *Physicians, Surgeons, Etc.* § 299, at 400 (2002) ("Under the 'continuous treatment' doctrine, the running of the statute of limitations is tolled when a course of treatment that includes wrongful acts or omissions has run continuously and is related to the original condition or complaint."); *Hill v. Fitzgerald*, 501 A.2d 27, 31–32 (Md. 1985) (holding while the doctrine applies to toll the limitations period for an undiscoverable medical malpractice claim, "[t]he rule does not, however, govern the date upon which the actionable negligence occurred"). Because our focus today is to ascertain only when the negligence occurred, the doctrine is not implicated.

Accordingly, we find persuasive a decision by Maryland's highest court, which like us, has rejected the continuous treatment rule. In *Jones v. Speed*, 577 A.2d 64 (Md. 1990), Jones and her husband filed a claim against her doctor, alleging failure to properly diagnosis her condition. The doctor moved for summary judgment, contending any negligence occurred outside the five-year limitations period. The issue was whether Jones could recover for subsequent malpractice if the initial negligence, but not the subsequent acts, was untimely. *Id.* at 67. The doctor presented the same argument that Dodds makes here—that because any negligence first occurred on the initial visit and outside the limitations period, claims based on all subsequent acts of malpractice were untimely. *Id.* at 66–67. As the court noted,

> The theory of the plaintiffs is rather straightforward. They do not retreat from their assertion that [the doctor] was negligent on 17 July 1978 when he failed to order a CAT scan or other radiographic studies and failed to diagnose the presence of Mrs. Jones's brain tumor. They argue, however, that each time Mrs. Jones returned to [the doctor] with unabated complaints of her chronic symptoms, the doctor had a duty to

reconsider his original diagnosis, and to obtain additional diagnostic studies. The breach of that duty, they urge, constitutes negligence.

*Id.* at 67. The doctor argued that to allow Jones to recover for acts that occurred within the limitations period would be to revive the continuous treatment rule, which had previously been rejected in Maryland. *Id.* However, the court disagreed, holding Jones could proceed on the theory that subsequent acts of negligence within the limitations period were recoverable, and in doing so, the court rejected the notion that its decision disturbed the legislature's intent that the limitations period act as an outer limit of liability. Instead, the court noted, "if the plaintiffs are correct, they will be entitled to recover damages *only* for acts of negligence occurring within five years of the filing of their claim." *Id.* at 68. Further, "[c]laims for damages occurring at an earlier time, and resulting from earlier acts of negligence on the part of the defendant, are effectively barred." *Id.* Notwithstanding this conclusion, the court reaffirmed that "[t]he continuous course of treatment rule remains lifeless in Maryland."[2] *Id.*

Dodds and Roane rely on Georgia case law where in *Kaminer*, the Georgia Supreme Court effectively adopted the "first occurrence rule" in interpreting its statute of repose in a misdiagnosis case.[3] *Kaminer v. Canas*, 653 S.E.2d 691, 692 (Ga. 2007). In a 4-3 decision containing a spirited dissent, the majority asserted the

---

[2] The dissent contends *Jones* is inapposite because it addresses Maryland's statute of limitations. We agree that the policy reasons supporting statutes of limitation and repose are different but believe this distinction is the proverbial red-herring in this case. The court's analysis in *Jones* is not premised on tolling principles applicable in a statute of limitations analysis, as the date of occurrence did not change based on when treatment ended or when the plaintiff's injury was discovered. Instead, the court's decision stood for the proposition that tortfeasors cannot cherry-pick untimely acts to shield themselves from every subsequent act of malpractice, whether or not those acts are within the limitation period. This rationale is entirely consistent with the text of our statute of repose, which is not limited to the first occurrence. Finally, we repeat, the continuous treatment rule and its companion the continuing tort doctrine are of no moment here because our precedent categorically bars recovery for acts which occurred outside the repose period. *See Harrison*, 354 S.C. at 141, 580 S.E.2d at 116.

[3] Ga. Code Ann. § 9-3-71(b) (2007) provides:
(b) Notwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.

date of the initial negligence starts the clock even for subsequent acts of malpractice. *Id.* at 695. The dissent's analysis mirrors that of Maryland's highest court, namely that a patient may pursue a claim for separate acts of medical malpractice that occurred within the limitations period. *Id.* at 698–99 (Hunstein, J., dissenting). While we disagree with the court of appeals that our statute of repose is materially different than Georgia's provision, and modify that portion of the court's opinion accordingly, we nevertheless believe the dissent in *Kaminer* is more persuasive, as it noted,

> [I]t is possible for a doctor to misdiagnose a patient more than once in the course of treatment, where new or more severe symptoms would, under the relevant standard of care, require a reassessment of the initial diagnosis. The Court of Appeals did not, as the majority contends, effectively revive the continuing treatment doctrine, which effects an *extension* of the statute of limitation with respect to the *initial* diagnosis. *See Young v. Williams,* 274 Ga. 845, 846, 560 S.E.2d 690 (2002). Instead, the Court of Appeals simply held that a *new* act of negligence, with its concomitant *new* injury, carries with it a *new* limitations period.

*Id.* at 698 (Hunstein, J., dissenting). We find this reasoning better comports with the General Assembly's codification of the statute of repose. We readily acknowledge the policy behind section 15-3-545(A) as "an **absolute time limit beyond which liability no longer exists and is not tolled for any reason** because to do so would upset the economic balance struck by the legislative body." *Harrison*, 354 S.C. at 138, 580 S.E.2d at 113–14 (emphasis in original). Moreover, our decision honors the purpose behind the statute of repose, in part, that "[w]hen causes of action are extinguished after such time, society generally may continue its business and personal relationships in peace, without worry that some cause of action may arise to haunt it because of some long-forgotten act or omission." *Langley v. Pierce*, 313 S.C. 401, 404–05, 438 S.E.2d 242, 243–44 (1993) (quoting *Kissel v. Rosenbaum*, 579 N.E2d 1322, 1326–28 (Ind. Ct. App. 1991). We fail to see the logic in preventing an aggrieved party from seeking redress for acts that occurred *within the repose period*. It can hardly be said that the acts of negligence alleged here that occurred within the repose period constitute "long-forgotten" acts or omissions.

Our decision also does not implicate any tolling principles, as only claims based on acts within the repose period are actionable. We find it wholly inconsistent to immunize serial malpractice under the guise that the legislature intended an "absolute time limit" when the acts for which the Marshalls seek to recover fall within such time constraints. *See State ex rel. Wilson v. Ortho-McNeil-Janssen Pharm., Inc.*, 414 S.C. 33, 78, 777 S.E.2d 176, 199–200 (2015) (noting that fixing

the deadlines on the date of the first instance of misconduct when there is repeated wrongdoing would allow "parties engaged in long-standing malfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing malfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated") (quoting *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 880 (2013)).

To hold otherwise would require us to rewrite our statute of repose and superimpose "first occurrence" into section 15-3-545(A) rather than merely interpret what the provision actually says—"the date of occurrence." Like the court of appeals, we reject the notion that our statute of repose requires us to aggregate multiple acts of malpractice as part of a "first diagnosis rule." Neither the statute's language nor our precedent sanctions such a result. Accordingly, we turn to whether the Marshalls have presented facts to survive a motion for summary judgment based on their claims of alleged medical malpractice which occurred on and after February 7, 2005, as to Dodds, and April 8, 2005, as to Roane.

Regarding Dodds, the record contains expert testimony that Dodds was negligent in failing to recognize that the continued use of medication designed to reduce protein levels was not effective, as revealed by tests in February and September of 2005—within the six-year repose period. Therefore, the Marshalls contend Dodds should have reconsidered the original diagnosis. At the least, the Marshalls' experts noted that if she had undergone the UPEP and SPEP tests, which would have cost approximately $100, Dodds would have realized the protein was cancerous. Concerning Roane, there is evidence in the record to support the Marshalls' claims that further testing was necessary, especially after Marshall exhibited chills, fever, enlarged lymph nodes, proteinuria, and elevated sedimentation rates on her April 29, 2005 visit. These symptoms, as well as the continued lack of improvement in her protein levels despite medication, are sufficient to defeat summary judgment. Because section 15-3-545(A) is triggered on the "date of occurrence," the Marshalls claims are not barred.

## CONCLUSION

Section 15-3-545(A) begins to run after each occurrence, which is consistent with our rejection of the continuous treatment rule and the continuous tort doctrine. Accordingly, we affirm as modified.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., and FEW, J., concur. JAMES, J., dissenting in a separate opinion in which KITTREDGE, J., concurs.**

**JUSTICE JAMES:** I respectfully dissent. I believe the majority has applied the continuous treatment rule and the continuing tort doctrine to the Marshalls' claims against Petitioners Dodds and Roane. We specifically refused to adopt either rule in *Harrison v. Bevilacqua*, 354 S.C. 129, 138-39, 580 S.E.2d 109, 114 (2003). The majority's holding undercuts the clear policy statement made by the General Assembly when it enacted the statute of repose. Many would applaud the alteration of the statute of repose to permit this action to proceed, but such alteration is within the province of the General Assembly, not the courts. Therefore, I would reverse the court of appeals and reinstate the circuit court's grant of summary judgment to Dodds and Roane.

I.

*A. Section 15-3-545(A)*

Our statute of repose provides:

> [A]ny action to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider . . . acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, *not to exceed six years from date of occurrence*, or as tolled by this section.

S.C. Code Ann. § 15-3-545(A) (2005) (emphasis added). The six-year period "constitutes an outer limit beyond which a medical malpractice claim is barred, regardless of whether it has or should have been discovered." *Hoffman v. Powell*, 298 S.C. 338, 339-40, 380 S.E.2d 821, 821 (1989).

In *Langley v. Pierce*, 313 S.C. 401, 438 S.E.2d 242 (1993), we quoted with approval the following from *Kissel v. Rosenbaum*, 579 N.E.2d 1322, 1326-28 (Ind. Ct. App. 1991):

> A statute of repose constitutes a substantive definition of rights rather than a procedural limitation provided by a statute of limitation. *See Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982).

. . . .

> Statutes of repose are based upon considerations of the economic best interests of the public as a whole and are substantive grants of immunity based upon a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists.

. . . .

> Society benefits when claims and causes are laid to rest after having been viable for reasonable time. When causes of action are extinguished after such time, society generally may continue its business and personal relationships in peace, without worry that some cause of action may arise to haunt it because of some long-forgotten act or omission. This is not only for the convenience of society but also due to necessity. At that point, society is secure and stable.

*Langley*, 313 S.C. at 404-05, 438 S.E.2d at 243-44.

### B. *The Continuous Treatment Rule and the Continuing Tort Doctrine*

In *Harrison v. Bevilacqua*, the patient at the center of the litigation was James McLean, a diagnosed schizophrenic who was judicially deemed incompetent. He was involuntarily committed to Crafts-Farrow State Hospital (operated by the Department of Mental Health) in 1982 and was not discharged until March 6, 1995. In the action commenced on his behalf on June 1, 1995, the plaintiff alleged the Department of Mental Health was negligent because McLean (1) had been confined in the hospital too long, (2) should not have resided in a locked ward, and (3) had been improperly medicated. Specifically, the plaintiff alleged McLean should have been released as early as October 1983. The plaintiff also alleged the Department failed to follow its own Level of Care reports which, at various times, recommended McLean's transfer to an open ward or a community facility or his home. The Department claimed the action was barred by our six-year statute of repose found in subsection 15-3-545(A). The plaintiff first claimed the continuous treatment rule and the continuing tort doctrine mandated that the time to commence the action did not begin to run until the date of McLean's discharge, March 6, 1995. Alternatively,

the plaintiff contended the five-year insanity tolling provision found in section 15-3-40(2)(a) of the South Carolina Code (2005) allowed recovery for any acts of negligence occurring five years before the date the action was commenced.

In *Harrison*, we considered and specifically rejected the adoption of both the "continuous treatment rule" and the "continuing tort doctrine." 354 S.C. at 138-39, 580 S.E.2d at 114. We recited the continuous treatment rule as follows:

> [I]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

*Id.* at 135, 580 S.E.2d at 112 (quoting *Preer v. Mims*, 323 S.C. 516, 519, 476 S.E.2d 472, 473 (1996)).

The doctrine of continuing tort applies "where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time." *Id.* at 139, 580 S.E.2d at 114 (quoting *Mears v. Gulfstream Aerospace Corp.*, 484 S.E.2d 659, 664 (Ga. Ct. App. 1997)). Under this theory, a limitations period does not begin to run "until such time as the continued tortious act producing injury is eliminated." *Id.* (quoting *Mears*, 484 S.E.2d at 664).

Our reason for rejecting both doctrines was to honor the public policy rationale behind the legislature's adoption of both the statute of limitations and the statute of repose, the latter of which reflects the establishment of "an absolute time limit beyond which liability no longer exists." *Id.* at 138, 580 S.E.2d at 113-14 (quoting *Langley*, 313 S.C. at 404, 438 S.E.2d at 243).

In finding the Marshalls' claims to be barred by the statute of repose, the circuit court relied in part upon Georgia case law holding that when there is a medical negligence claim arising from an alleged failure to diagnose and treat a condition over a course of time, the statute of repose begins to run on the date of the first negligent act. *See Kaminer v. Canas*, 653 S.E.2d 691, 697 (Ga. 2007); *Howell v. Zottoli*, 691 S.E.2d 564, 567 (Ga. Ct. App. 2010).

The Georgia statute of limitations and statute of repose are found in section 9-3-71 of the Georgia Code and provide as follows:

> (a) Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.
>
> (b) Notwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought *more than five years after the date on which the negligent or wrongful act or omission occurred.*

Ga. Code Ann. § 9-3-71(a)-(b) (2007) (emphasis added). The Georgia statute of repose, subsection 9-3-71(b), is markedly similar to our statute of repose.

The Supreme Court of Georgia, like this Court, has refused to adopt the continuous treatment rule. *See Young v. Williams*, 560 S.E.2d 690, 693 (Ga. 2002) (refusing to adopt the continuous treatment rule in medical malpractice cases involving allegations of misdiagnosis). In *Harrison*, we relied upon Georgia precedent in rejecting the continuing tort doctrine. 354 S.C. at 139, 580 S.E.2d at 114 (providing the continuing tort doctrine is inapplicable to medical malpractice cases since the doctrine "would nullify the intent of the General Assembly that, after five years, no medical malpractice action could be brought, even when a disability attaches to toll the running of the statute because the statute of repose abolishes any action five years after the negligent or wrongful act or omission" (quoting *Charter Peachford Behavioral Health Sys. v. Kohout*, 504 S.E.2d 514, 521 (Ga. Ct. App. 1998))).

In light of our holding in *Harrison*, I am constrained to agree with the rationale employed by the Supreme Court of Georgia in *Kaminer*. The *Kaminer* Court held that in cases of misdiagnosis and resulting mistreatment, when the disease existed on the date of initial misdiagnosis, the statute of repose begins to run on the date of the initial misdiagnosis. 653 S.E.2d at 697. In *Kaminer*, the plaintiff was born with a rare heart defect for which he underwent surgery when he was two months old. During and after the procedure, the plaintiff received transfusions of whole blood and blood products. The plaintiff then exhibited signs of pediatric AIDS, but the defendant doctors attributed these signs to the plaintiff's heart condition. The plaintiff began treatment with one defendant doctor at age seven and with the other defendant doctor at age nine. After being treated by one defendant for nine

years and by another defendant doctor for seven years, the plaintiff was finally given an HIV test at age seventeen. The test showed he had AIDS, and it was uncontroverted he contracted the AIDS virus from the blood transfusions beginning at age two months. Although the defendant doctors serially misdiagnosed the plaintiff's AIDS each time the plaintiff presented to them for treatment, the *Kaminer* Court concluded the plaintiff's claims were barred by the statute of repose, holding that in cases of misdiagnosis and mistreatment, the statute of repose begins to run on the date of the initial misdiagnosis. *Id.* In so holding, the *Kaminer* Court recognized that even though the focus of a statute of repose is generally the date of the alleged negligent act, a later negligent act by the same medical care provider cannot serve as the new starting point of the statute of repose where the negligent act is the repeated failure to diagnose and treat a continuing condition. *Id.*[4] I agree with this reasoning, as it comports with the public policy considerations upon which our statute of repose is based.

The majority gives short shrift to our conclusions in *Harrison* and simply concludes that the continuous treatment rule and the continuing tort doctrine do not apply to the Marshalls' claims. I certainly agree that neither doctrine applies; neither doctrine can ever apply, as we explicitly rejected both in *Harrison*. The majority has essentially adopted a refined version of the continuous treatment rule and the continuing tort doctrine. In my view, the majority has "run afoul of the absolute limitations policy the Legislature has clearly set" in our statute of repose. *See Harrison*, 354 S.C. at 138, 580 S.E.2d at 114.

The majority relies upon the rationale of the Court of Appeals of Maryland in *Jones v. Speed*[5] in support of its conclusion that the statute of repose is not violated when a patient seeks recovery only for those acts of negligence occurring within the statute of repose. The majority's reliance upon *Jones* is misplaced. In *Jones*, the Court of Appeals considered the provisions of section 5-109(a)(1) of the Maryland Code when considering a factual scenario very similar to the one at bar and concluded the plaintiff's action could proceed, in spite of Maryland's rejection of the

---

[4] The Supreme Court of Georgia has held that its interpretation of the Georgia statute of repose in *Kaminer* does not apply in a medical malpractice case founded upon allegations of failure to warn, treat, and advise a plaintiff patient when she presented for treatment of new medical conditions not related to the condition for which she first sought treatment. *See Schramm v. Lyon*, 673 S.E.2d 241, 242-43 (Ga. 2009).

[5] 577 A.2d 64 (Md. 1990).

continuous treatment rule. 577 A.2d at 70. Section 5-109(a)(1) is markedly different from our statute of repose and provides in pertinent part:

> (a) An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3-2A-01 of this article, shall be filed within the earlier of:
>
> (1) Five years of the time the injury was committed[.]

A recitation of the facts and legal analysis employed by the Court of Appeals of Maryland in *Jones* is not necessary, as the Court clarified in *Anderson v. United States*, 46 A.3d 426, 443 (Md. 2012), that section 5-109(a)(1) was a statute of <u>limitations</u> and not a statute of <u>repose</u>. Citing *Jones* and other prior decisions as examples, the *Anderson* Court acknowledged it had previously characterized section 5-109(a)(1) as both a statute of limitations and a statute of repose. *Id.* The *Anderson* Court explained in great detail the difference between the two and concluded section 5-109(a)(1) was "a statute of limitations because its trigger is an 'injury' which . . . means when the negligent act is coupled with some harm, rather than being dependent on some action independent of the injury." *Id.* I see no logic in applying another state's analysis of its statute of limitations to our analysis of our statute of repose, especially when the statutes are worded so differently and when the public policy considerations prompting the adoption of a statute of repose are different from the public policy considerations prompting the adoption of a statute of limitations. "A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. A statute of repose creates a substantive right in those protected to be free from liability after a legislatively determined period of time." *Capco of Summerville, Inc. v. J.H. Gayle Constr. Co., Inc.*, 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) (citing *Langley*, 313 S.C. at 403-04, 438 S.E.2d at 243).

The policy behind our statute of repose is that at some point, the liability of a negligent defendant has to be extinguished, even if the plaintiff has not discovered her injury by the expiration of the repose period. Statutes of repose are designed to cut off liability after a period of years, sometimes bringing harsh results. As we noted in *Capco*, "[s]tatutes of repose by their nature impose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it

even exists."[6]  *Id.* at 142, 628 S.E.2d at 41 (quoting *Camacho v. Todd & Leiser Homes*, 706 N.W.2d 49, 54 n.6 (Minn. 2005)).  However, we cannot ignore the policy considerations behind the statute, and "we are not at liberty to rewrite the statute[]."  *Id.* at 144, 628 S.E.2d at 42.

The approach sponsored by the majority allows the Marshalls to move forward the dates of treatment for which they want to sue, even though, according to their experts, virtually identical acts of alleged negligence occurred on all pertinent treatment dates before and after the crucial dates of February 7, 2005 (Dodds) and April 8, 2005 (Roane).  This approach belies the reasoning behind our refusal to adopt the continuous treatment rule and the continuing tort doctrine in *Harrison* and nullifies the public policy rationale behind our General Assembly's adoption of the statute of repose.  As I stated when I began, many would applaud the alteration of the statute of repose necessary to permit the instant action to proceed; however, such alteration is within the province of the General Assembly, not the courts.  "[T]his court does not make the law, but it does enforce it, in sorrow over its rigor in some instances."  *Hillhouse v. Jennings*, 60 S.C. 373, 380, 38 S.E. 599, 601-02 (1901).

## II.

As to the Marshalls' claims against Dodds, (1) Dodds allegedly first negligently failed to diagnose Ms. Marshall's cancer in 2004 and (2) any subsequent misdiagnoses by Dodds were a continuation of Dodds' previous alleged misdiagnoses.  I would hold any misdiagnoses by Dodds on or after February 7, 2005, did not trigger any new repose periods as to Dodds.  As to the Marshalls' claims against Roane, Roane allegedly first breached the standard of care as early as 2002, 2003, or 2004 (1) by failing to perform appropriate testing, (2) by not reconsidering Ms. Marshall's lack of progress under the prescribed course of treatment, and (3) by failing to administer yearly laboratory studies until reaching a definitive diagnosis of Ms. Marshall's blood cancer.  I would hold any misdiagnoses by Roane on or after April 8, 2005, did not trigger any new repose periods as to Roane.  Therefore, I would reverse the court of appeals and reinstate the circuit court's grant of summary judgment to Dodds and Roane.

**KITTREDGE, J., concurs.**

---

[6] In *Hoffman*, we rejected equal protection and due process challenges to the statute of repose.  298 S.C. at 342, 380 S.E.2d at 823.