# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Poly-Med, Inc., Plaintiff,

v.

Novus Scientific Pte. Ltd., Novus Scientific, Inc.; Novus Scientific AB, Defendants.

Appellate Case No. 2021-000027

---

## CERTIFIED QUESTIONS

---

ON CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

---

Opinion No. 28111
Heard September 22, 2021 – Filed September 14, 2022

---

## CERTIFIED QUESTIONS ANSWERED

---

Stephen L. Brown and Russell G. Hines, both of Clement Rivers, LLP, of Charleston, and Paul Peter Nicolai and Marwan S. Zubi, both of Nicolai Law Group, PC, of Springfield, MA, for Plaintiff.

Mark C. Dukes, Jennifer L. Mallory, A. Mattison Bogan, and Robert H. McWilliams Jr., all of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Defendants.

**JUSTICE KITTREDGE:**  The United States Court of Appeals for the Fourth Circuit certified the following questions to this Court pursuant to Rule 244 of the South Carolina Appellate Court Rules:

1. Under a contract with continuing rights and obligations, does South Carolina law recognize the continuing breach theory in applying the statute of limitations to breach-of-contract claims, such that claims for separate breaches that occurred (or were only first discovered) within the statutory period are not time-barred, notwithstanding the prior occurrence and/or discovery of breaches as to which the statute of limitations has expired?

2. Does it matter if the breaches are of the same character or type as the previous breaches now barred?

South Carolina does not recognize the continuing breach theory.  Moreover, it may matter greatly "if the breaches are of the same character or type as the previous breaches now barred."  Nevertheless, in a contract action, it is the intent of the parties that controls.  Whether separate breaches of the same character or type as time-barred breaches trigger a new, separate statute of limitations depends on the parties' contractual relationship—specifically, what the parties intended.[1]

## I.

The rule on certification is designed for this Court to answer questions of South Carolina law.  *See Butler v. Travelers Home & Marine Ins. Co.*, 433 S.C. 360, 366, 369, 858 S.E.2d 407, 410–12 (2021) (recognizing that Rule 244(a), SCACR, permits this Court to answer questions of law, not questions of fact).  Difficulty arises when intended legal questions are inextricably linked to disputed facts.  Experience has shown that the purpose of the rule for "certification of questions of law" is rarely achieved because parties to the underlying dispute almost invariably insert alleged facts of the case into the question.  To no fault of the certifying court, this results from the apparently common belief that "favorable facts" supporting a party will influence this Court to rule favorably for that party on the legal question presented.  This comment is not intended as a criticism but merely a recognition that good lawyers well understand that legal decision-making is often context dependent, and the result shifts as the facts shift.  We have recognized this issue

---

[1] We answer the certified questions, cognizant of the fact our discussion may stray beyond the issues raised on appeal to the Fourth Circuit.

and expressed a similar concern before. *See Donze v. Gen. Motors, L.L.C.*, 420 S.C. 8, 24, 800 S.E.2d 479, 487 (2017) (Kittredge, J., concurring) ("We are often presented with ostensible questions of law that are predicated on certain factual assumptions. We must answer those questions narrowly and recognize that even a slight tilting of the facts can impact the analysis and alter the conclusion.").

Out of respect for the certifying court, we answer these certified questions as fully as we are able, without the benefit of the parties' contract and without offering an opinion as to the viability of the claims of Plaintiff Poly-Med, Inc.

## II.

In June 2005, Poly-Med, Inc. (Poly-Med) entered into a Sale of Materials and License Agreement (the Agreement) with the predecessor in interest to Defendants Novus Scientific Pte. Ltd., Novus Scientific, Inc., and Novus Scientific AB (collectively, Novus). The Agreement required Poly-Med to develop a surgical mesh for Novus's exclusive use in hernia-repair products.

The dispute between Poly-Med and Novus arises from two ongoing obligations in the parties' Agreement. As characterized by the Fourth Circuit, the alleged breach of the Agreement centers on the contractual provisions that contain these two obligations: the "hernia-only" provision and the "patent-application" provisions. The parties accept the federal court's characterization of the dispute.

Poly-Med commenced a breach of contract action against Novus on May 8, 2015, in the federal district court, alleging Novus violated the Agreement's hernia-only and patent-application provisions on multiple, separate occasions.[2] The statute of limitations for actions pursuant to contract is three years. S.C. Code Ann. § 15-3-530(1) (2005). Novus moved for partial summary judgment, arguing Poly-Med's breach of contract claims were time-barred by the three-year statute of limitations. The federal district court found, and it is undisputed, that Poly-Med was on notice of both the hernia-only and patent-application contract claims against Novus by 2010.

From the outset, Poly-Med has conceded its claims on the "older" breaches are time-barred. Poly-Med nevertheless maintains its claims are viable for what it contends are the "fresh" breaches that Novus committed or that Poly-Med only

---

[2] Poly-Med brought other claims against Novus that are not involved in the certified questions.

could have discovered within three years of the May 8, 2015 federal court complaint. According to the federal district court, this argument required it to determine whether South Carolina recognized the continuing breach theory "wherein each discrete event of alleged breach individually starts a new limitations period." *Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-CV-01964-JMC, 2018 WL 1932551, at *7 (D.S.C. Apr. 24, 2018). In other words, *by operation of law*, this doctrine would operate to save Poly-Med's later arising claims, even if the statute of limitations had lapsed for earlier breaches of the same contract provisions.

The federal district court determined, based in part on this Court's decision in *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*,[3] that South Carolina had not adopted the continuing breach theory. As a result, the federal district court found Poly-Med's breach of contract claims were time-barred and granted summary judgment to Novus. Poly-Med appealed, challenging the federal district court's rejection of the continuing breach theory in light of this Court's decisions in *Janssen* and another case, *Marshall v. Dodds*,[4] which was decided after summary judgment was entered. It is apparent from the order of certification that our majority decision in *Marshall* was the impetus for the Fourth Circuit's decision to certify the questions.

## III.

The first certified question asks whether South Carolina law recognizes the continuing breach theory. At the outset, we must understand what is meant by the phrase "continuing breach theory." The federal district court used multiple terms interchangeably, including "continuing breach," "continuing wrong," and "continuing accrual." The federal court further referenced the "continuing claims doctrine" and provided the blackletter definition:

> The "continuing claim doctrine" operates to save parties who have pled a series of distinct events, each of which gives rise to a separate cause of action subject to its own statute of limitations, as a single continuing event; in such cases, the continuing claims doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events. That is, the doctrine allows [a] plaintiff

---

[3] 414 S.C. 33, 777 S.E.2d 176 (2015) [hereinafter *Janssen*].

[4] 426 S.C. 453, 827 S.E.2d 570 (2019).

> to get relief for a time-barred act by linking it with an act that is within the limitations period.

54 C.J.S. *Limitations of Actions* § 131 (2020) (footnotes omitted).  We conclude that this definition of the continuing claims doctrine is what the Fourth Circuit intended by the phrase continuing breach theory.

South Carolina has not adopted the continuing breach theory in *Janssen*, *Marshall*, or otherwise.

## A.

The federal court correctly concluded our holding in *Janssen* is limited to the South Carolina Unfair Trade Practices Act (SCUTPA).  The State sued Janssen under SCUTPA for improper prescription-drug labeling and sought to recover civil penalties of up to "five thousand dollars *per violation*," as provided in SCUTPA.  S.C. Code Ann. § 39-5-110 (1976) (emphasis added).  Based on the "per violation" language and legislative intent of SCUTPA, we rejected Janssen's argument that the statute of limitations barred the entire labeling claim.  *Janssen*, 414 S.C. at 77, 777 S.E.2d at 199.  Instead, "[w]e adopt[ed] the view that aligns with legislative intent as reflected in section 39-5-110," and held SCUTPA's statute of limitations begins to run anew with each violation.  *Id.* at 79, 777 S.E.2d at 200.  Accordingly, we limited the State's recovery to a period coextensive with the three-year limitations period.  *Id.*

In so holding, we explained that "the language of SCUTPA itself contemplates that an unlawful method, act, or practice may result in multiple statutory violations, and it is the violations themselves that cause the statute of limitations to begin to run."  *Id.*  Nothing in *Janssen* suggests the Court adopted what Poly-Med argues is a generalized legal concept for courts to apply outside the statutory context of SCUTPA.

Likewise, the majority in *Marshall* in no way promulgated a new rule applicable to the statute of limitations for a breach of contract claim.  *Marshall* involved a tort action.  *See Marshall*, 426 S.C. at 455, 827 S.E.2d at 571.  In *Marshall*, we interpreted the statute of repose for medical malpractice claims, which requires an action be brought within "six years from the date of occurrence."  S.C. Code Ann. § 15-3-545(A) (2005).  The majority held that claims based on acts within the repose period were actionable, while acts that occurred beyond the six-year period were barred.  426 S.C. at 465, 827 S.E.2d at 576.  *Marshall* concluded that "[s]ection 15-3-545(A) begins to run after each occurrence," which "honors the

purpose behind the statute of repose." *Id.* at 465, 467, 827 S.E.2d at 576–77. In reaching this decision, the majority explained: "[t]o hold otherwise would require us to rewrite our statute of repose and superimpose 'first occurrence' into section 15-3-545(A) rather than merely interpret what the provision actually says—'the date of occurrence.'" *Id.* at 466, 827 S.E.2d at 576–77.

Poly-Med argues the distinction between a statute of limitations and a statute of repose is immaterial in this case. We disagree. *See, e.g.*, *Columbia/CSA-HS Greater Columbia Healthcare Sys., L.P. v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 411 S.C. 557, 560, 769 S.E.2d 847, 848 (2015) (distinguishing statutes of limitations, which have the benefit of being tolled under appropriate circumstances, from statutes of repose, which typically may not be tolled for any reason); *Langley v. Pierce*, 313 S.C. 401, 404, 438 S.E.2d 242, 243 (1993) (stating "[a] statute of repose constitutes a substantive definition of rights," while a statute of limitations provides only "a procedural limitation" (citation omitted)). To apply *Marshall*'s rationale to breach of contract claims where the limitations period does not involve a statute of repose would extend *Marshall* far beyond its reach.

Moreover, embedded in South Carolina's approach to the statute of limitations is a discovery rule. "The limitations period begins to run when a party knows or should know, through the exercise of due diligence, that a cause of action might exist." *Anonymous Taxpayer v. S.C. Dep't of Revenue*, 377 S.C. 425, 439, 661 S.E.2d 73, 80 (2008). A statute of repose does not involve the discovery rule. *See* 51 Am. Jur. 2d *Limitation of Actions* § 127 (2021) (stating statutes of repose do not incorporate the discovery rule, and thus the repose period begins running when a specific event occurs, regardless of whether an action has accrued or whether any injury has resulted). In jurisdictions that have a discovery rule like South Carolina, the clear majority rule rejects the continuing breach theory.[5]

We therefore reject Poly-Med's reliance on *Janssen* and *Marshall*. *Janssen* and *Marshall* concern the application of statutory language to effectuate the intent of the South Carolina legislature, not the adoption of a generalized continuing breach theory in contract actions.

---

[5] In support of the continuing breach theory, Poly-Med primarily relies on case law from jurisdictions that do not apply the discovery rule to breach of contract claims.

**B.**

We elect to go further and answer the second certified question. The answer, especially the analysis, may be helpful in more fully understanding the appropriate framework for determining if separate breaches trigger separate limitation periods.

The second certified question asks, "Does it matter if the breaches are of the same character or type as the previous breaches now barred?" The answer is that it could matter greatly whether the breaches are of the same character or type. The ultimate answer depends on whether the contracting parties intend for multiple alleged breaches to constitute a single breach or separate breaches. While the principle is easily stated, such a determination may not be as straightforward. We begin with a clear example, as Poly-Med provides a hypothetical in its brief that is easily answered:

> A builder enters a contract to build a building in accordance with certain plans and specifications. The plans and specifications are generally incorporated into the contract. The contractor paints the building butter yellow instead of sunshine yellow as called for in the contract. Research shows this difference in color has an impact on the resale value of the building. There is a breach of contract, but perhaps the owner, for business, personal, or whatever reasons, decides not to sue for the breach. Three years and one day later, the roof starts leaking because the plans were not followed by the contractor.

Poly-Med continues, attributing a position to Novus it has never made:

> The contractor will argue it breached the contract when it painted the building a color other than the one specified in the contract. As such, under Novus's proposed answer to the certified question, any issues with the roof leaks are barred, as the owner knew or should have known about the potential claim against the contractor. The same would hold true for any breaches of contract later discovered with the building.

In fairness to Poly-Med, it admits its example is "far-fetched." There is no intellectually honest argument that the running of the statute of limitations for painting the building the wrong color somehow time bars a claim for the leaking roof. Novus admits Poly-Med's hypothetical presents separate breaches, each governed by a separate statute of limitations. In such a situation, the owner most

assuredly could bring the roof leak claim although the statute of limitations would bar an action on the wrong color of paint. These are two entirely different—indeed separate—contractual duties and requirements. An analogy would be equating a breach of the hernia-only provision with a breach of the patent-application provisions, and claiming the running of the statute of limitations on the hernia-only breach time bars a claim for breach of the patent-application provisions. Such an argument would be a nonstarter. The case before the Court presents a more nuanced situation, primarily because an executory contract is involved, with continuing and ongoing duties, and the breaches (either hernia-only or patent-application) are perhaps of the same character.

With respect to the hernia-only provision, Poly-Med asserts that Novus violated the Agreement on multiple occasions by selling, using, and manufacturing the mesh for purposes beyond hernia repair. Poly-Med contends that each discrete act by Novus constitutes a distinct and separate breach of the hernia-only provision. Conversely, Novus maintains its actions effectively operate as a single breach—a breach of the hernia-only provision. In support of its position, Novus points to internal Poly-Med documents from 2010 discussing the possibility that Novus was testing or promoting the mesh for use beyond hernia repair. Novus asserts that these documents confirm Poly-Med was on notice of the hernia-only breach of contract claim by 2010 and chose not to file suit within the limitations period.

Poly-Med next argues that Novus violated the Agreement's patent-application provisions by filing and prosecuting numerous patent applications in its own name, failing to advise or consult with Poly-Med regarding those applications, and asserting ownership rights over patents that contractually belong to Poly-Med. As with the hernia-only claims, Poly-Med maintains that Novus violated the patent-application provisions in distinct ways, each constituting a separate breach of the Agreement. Novus disagrees and offers evidence that it put Poly-Med on notice in 2010 that Novus had filed patent applications in its name and without consulting Poly-Med. Consequently, Novus argues Poly-Med had been on notice since 2010 of a patent-application breach of contract claim, rendering those and subsequent patent-application breach claims also time-barred.

We acknowledge the obvious—an executory contract with continuing rights and obligations may result in separate breaches and give rise to separate causes of action for breach of contract subject to a new statute of limitations period.[6] Thus,

---

[6] While the decisions in *Janssen* and *Marshall* are properly viewed as statutory construction decisions, a breach of contract action necessarily involves a

it may be that each hernia-only and each patent-application alleged breach of contract claim is, respectively, separate and distinct from another. Conversely, it may be that the alleged breaches of the hernia-only and patent-application provisions constitute, respectively, a single breach. Poly-Med argues the former, while Novus insists upon the latter. *Compare* 54 C.J.S. *Limitations of Actions* § 130 ("[I]f independent acts cause independent injuries, each act is separately actionable, and the statute of limitations begins to run separately with each alleged breach."), *with Maher v. Tietex Corp.*, 331 S.C. 371, 383–84, 500 S.E.2d 204, 210–11 (Ct. App. 1998) (rejecting the "continuing wrong" doctrine and finding the case presented "a single wrong with continuing effects" and thus "[t]he objective test in South Carolina's discovery rule [was] sufficient to allow plaintiffs the opportunity to discover and act upon the original breach"). The resolution of the dispute is not controlled by whether South Carolina has adopted the continuing breach doctrine, but rather by a determination of what the contracting parties intended.

Fundamentally, parties are generally free to contract as they desire. It is the role of a court to give effect to the contracting parties' intentions. *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). In most contracts, based on the terms of the agreement and the context in which it was reached, each breach of a distinct and separate duty gives rise to a separate right of action. On the other hand, as we recently recognized, "the parties to a contract may set forth limitations on the remedies available to enforce the contract." *Beverly v. Grand Strand Reg'l Med. Ctr., L.L.C.*, 435 S.C. 594, 602, 869 S.E.2d 812, 817 (2022). These fundamental principles apply equally whether considering breaches of separate and distinct obligations or multiple breaches of a single obligation. Here, if the terms of this contract indicate the parties intended that a series of alleged breaches of the hernia-only or patent-application provisions constitute only one breach with a single remedy, then it would appear Novus is correct. That, however, is a factual question for the federal court to answer; it is not a question of law for this Court. *See* 17B C.J.S. *Contracts* § 840 (2020) ("Whether a contract's obligations are divisible or indivisible for statute of limitations purposes is a matter of contract interpretation in which the task is to discern the parties' intention as expressed by them in the words they have used.").

---

determination of the terms of the contract to ascertain and give legal effect to the parties' intentions. An executory contract, by definition, entails an ongoing relationship.

In answering the certified questions, we have purposefully avoided the skirmish into the competing facts advanced by the parties. In addition, it would seem that the parties' intent may be gleaned from the Agreement, provided the Agreement unambiguously addresses the matter. *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009) (explaining that "[t]he cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language," and if the language is unambiguous, "the language alone determines the contract's force and effect"). While parts of the Agreement are cited in the record, we have not been provided a copy of the entire Agreement. Accordingly, we offer no opinion on the ultimate outcome and viability of Poly-Med's claims. That determination is for the federal court.

## IV.

South Carolina does not recognize the continuing breach theory in applying the statute of limitations to breach of contract claims. Yet, we do not answer the ultimate question presented in the dispute between Poly-Med and Novus. While the parties have pressed this Court with a presentation of facts in a light most favorable to their respective desired outcomes, we offer no opinion on the viability of Poly-Med's claims. Ultimately, the dispositive question is whether the parties intended through their Agreement for separate breaches to give rise to new claims with a new statute of limitations period.

**CERTIFIED QUESTIONS ANSWERED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**